# RICE v. THEIMER *et al.*

No. 5999.   Opinion Filed February 16, 1915.

(146 Pac. 702.)

1. **SPECIFIC PERFORMANCE—Right of Action—Land Sale Contract.**   Where, in a suit for specific performance, plaintiff, as administratrix, agreed to sell for $3,000, "as soon as she could be authorized so to do by the county court," an entire 160-acre tract of land, and defendant thereby agreed to purchase the same, and, pursuant to said agreement, defendant deposited his check for $500 payable to her order, as a guarantee of good faith, and at once entered into possession of the land, and where thereafter plaintiff, as such, invoked the jurisdiction of the probate court, and proceeded to a point where the court ordered a sale of the interest of the minors therein, and where, by mutual consent, the proceedings were abandoned on accout of defendant expressing a preference to buy at a guardian's sale, and where plaintiff, who was also guardian for the minor heirs, invoked the jurisdiction of the probate court, and proceeded to a point where said court ordered a sale of the interest of the minors therein, wnich was had and duly approved, and deeds ordered made the purchaser who had bid $909.09 for their interest "conditioned that the adult heirs who owned the undivided interest in the land will execute conveyances to me, conveying all their interest in the land, for the same pro rata amount as is offered herein," held, that it was no objection to a specific performance of the contract that the adult heirs were not parties to the written contract.

2. **SPECIFIC PERFORMANCE—Land Sale Contract—Right to Relief—Evidence.**   A contract for the sale of land is capable of being specifically enforced, although, on its face, it discloses that the consent of third persons was necessary to the performance, where the evidence discloses that such consent was obtained. The test of the enforceability of such contract is the ability of the person seeking its specific performance to secure the performance of the act by the third persons.

3. **GUARDIAN AND WARD—Appointment of Guardian—Collateral Attack—Petition.**   Where Rev. Laws 1910, section 6790, provides, with reference to the jurisdiction of the probate court, "The proceedings of this court are construed in the same manner, and with like intendments, as the proceedings of courts of general jurisdiction, and to its records, * * * there are accorded like force, effect and legal presumption as to the records, * * * of district courts," a petition therein which fails to state, that the

residence of the minor is in the county where the petition is presented and appointment made is not void on collateral attack.

4. **APPEAL AND ERROR**—Harmless Error—Evidence. It is not error for the trial court, in aid of the presumption that the minors were residents of the county at the time of the appointment of a guardian, to admit parol evidence establishing such as an undisputed fact.

5. **GUARDIAN AND WARD**—Appointment of Guardian—Conclusiveness—Collateral Attack. Where the order of the probate court in appointing a guardian recited in the order of appointment that notice was given as required by Rev. Laws 1910, section 6522, the same is conclusive on collateral attack.

6. **GUARDIAN AND WARD**—Bond—Requisites—Sale of Realty. A bond required to be given by every guardian authorized to sell real estate pursuant to Comp. Laws 1909 section 5509 (Rev. Laws 1910, section 6564), conditioned that the guardian "shall faithfully execute the duties of her trust according to law," substantially complies with the statute. (b) The fact that the bond executed by such guardian pursuant to said section of the statute runs to the "state of Oklahoma," instead of to the "county judge," as therein required, does not impair its validity as a statutory bond.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*

*W. R. Taylor, Judge.*

Action by Elizabeth B. Theimer, guardian against Henry C. Rice and others. Judgment for the plaintiff, and defendant Rice brings error. Affirmed.

*Stephen C. Treadwell,* for plaintiff in error.

*Geo. J. Eacock* and *W. J. Davidson,* for defendants in error.

TURNER, J. On April 29, 1913, Elizabeth B. Theimer, as guardian of her five minor children, sued Henry C. Rice and her six adult children and herself, as administratrix of the estate of her deceased husband, and the Farmers' National Bank, for the specific performance of an alleged contract for the sale of certain real estate, the property of her husband at the time of his death.

To her petition the adult children answered, in effect, an admission of the facts sets forth in her petition, and, by way of cross-petition, prayed also for a specific performance of the contract, which is alleged by all parties in interest to have been made with Rice only. The defendant Elizabeth B. Theimer, as administratrix, in her answer disclaimed any interest in the premises as administratrix, and alleged that all the debts of the estate had been paid. A check for $500, as part of the purchase money, having been placed in the hands of defendant Farmers' National Bank, the bank, after denying the allegations of the petition, brought the check in to abide the orders of the court. For separate answer Rice pleaded a general denial, and that the title tendered him was not a "merchantable title," such as he contracted to buy, because of certain alleged defects in certain court proceedings had and hereinafter mentioned. It seems that Rice was in possession of the land for the year 1912, and that another suit was brought by all the Theimers against him to recover the rent thereon for that year. After issues joined therein by answer and reply both causes were consolidated and so proceeded. There was trial to the court, and judgment decreeing specific performance as prayed, and Rice brings the case here. The allegations of the petition are supported by the proof. The facts are undisputed. The facts are: Benjamin T. Theimer dies intestate in 1904, leaving him surviving Elizabeth B. Theimer, his wife, and eleven children, six of whom have reached their majority since the bringing of this suit. He also left the 160 acres of land in controversy. Thereafter said Elizabeth qualified both as administrator of the estate and guardian of their five minor children. It is unnecessary to state the respective interests of the widow and children in the land. On July 3, 1905, the widow, pursuant to the prayer of her petition, was appointed guardian of said minor children in the probate court of Oklahoma county. Her petition so to be appointed failed to state that the minors were residents of said county, but did state

that she was a resident thereof.   The records of that court fail ·to disclose that notice of the application for appointment was given to any person in charge of said minors, or, indeed, to any one else( but disclose that a waiver was made in writing subscribed by four of the minor children over 14 years of age.   In the order of appointment it was recited that "it being first proven that notice of this hearing has been first given as required by law," after which she duly qualified and gave bond.   On May 28, 1912, Rice, desiring to buy said land, in writing agreed with her, as admisintratrix, so to do, and she to sell the whole 160 acres to him for $3,000 cash, as soon as she could be authorized, as administratrix, so to do by the county court.   At the same time he, pursuant to said agreement, deposited in the Farmers' National Bank his certified check for $500, payable to her order, as a guarantee of good faith.   The agreement recited that, if the court "refused to order said sale and complete the same." Rice was not to pay rent for the land for the year 1912; also "that party of the first part shall furnish an abstract to said lands, showing merchantable title, and, should this title be defective in any way, then the same shall be forfeited or said contract shall be void, and the $500 returned to said Rice." Thereupon Rice took possession of the land, and the administratrix invoked the jurisdiction of the county ·court to sell the interests of the wards therein, and prosecuted the proceedings to a point where, in July, 1912, she obtained an order so to do.   Here the proceedings ended, it seems, by mutual consent, owing to Rice expressing a preference to buy at a guardian's sale.   Accordingly, on September 9, 1912 said Elizabeth, as guardian, by petition invoked the jurisdiction of said court for the sale of the undivided interest of her wards in the land and obtained therefrom an order setting the case for hearing upon the petition and proof to be taken on September 30, 1912, notice of which was duly given, and, at the conclusion, an order for the guardian to sell the interests of the wards therein was granted,

as prayed, for cash at private sale, upon the execution by her of a bond in the further sum of $1,500. On October 9, 1912, pursuant to said order, she gave bond payable to the state of Oklahoma, conditioned that, "if said guardian shall faithfully execute the duties of her trust according to law, then this obligation shall be void; otherwise," etc., which was duly approved. On October 26, 1912, after appraisement, etc., duly had, Rice at the sale of the land submitted his bid therefor in writing as follows:

"To George J. Eacock, Attorney of Record for Elizabeth B. Theimer, Guardian for Louis M. Theimer, Lena M. Theimer, Paul M. Theimer, Anna M. Theimer, Ella M. Theimer, Minors:

"I hereby submit bid for the undivided interest of the above-named minors in and to the following described lands, to wit: N. E. ¼, section 34, township 11, range 2 W., located in Oklahoma county, Oklahoma, in the sum of $909.09.

"The above bid is conditioned that the adult heirs who own the undivided interest in said land will execute conveyances to me, conveying all their interest in the land, for the same *pro rata* amount that is offered herein: That is to say, the entire one hundred and sixty acres of land will cost me the sum of three thousand ($3,000.00) dollars.            Henry C. Rice."

Which was duly accepted, and, upon a return thereof made to the court, upon proper hearing, the sale was duly approved, and a deed ordered made to the purchaser. It is unnecessary to further recite the record, except to say that, after Rice refused to comply with the terms of his bid and accept the deed of the minors, and also the deed of the adult heirs tendered, the suit was brought on order of the county court.

This is clearly a case for specific performance. The contract in writing between Elizabeth B. Theimer and Henry C. Rice, in effect, was that, although she represented only the interest of the

minors, she agreed to sell, and Rice to buy, the whole of the land, which included the interest of the adult heirs as well; in other words, the agreement was an undertaking on her part not only to convey to Rice the interest of the minors, as soon as she could be authorized so to do by the county court, but a further undertaking on her part to secure to him the interest of the adult heirs, all of which she undertook to do before becoming entitled to the $3,000 agreed to be paid therefor by Rice. Contrary to the contention of defendant, this agreement is capable of being specifically enforced, although the adult heirs did not sign the contract. This for the reason that they acquiesced therein, which is evidenced by the fact that, with their knowledge and consent, Rice took possession of the property under the agreement, and by the further fact that they afterwards tendered their deeds pursuant to its terms. Here, then, is a contract sought to be specifically enforced which discloses on its face that consent of third persons was necessary to its performance, and where the evidence discloses that such consent was obtained. 36 Cyc. 573, cites numerous cases support the text that:

"It is no objection to the specific enforcement of a contract that consent of a third person is necessary to its performance, where it is shown that he does or will consent."

*Lyman v. Gedney*, 114 Ill. 388, 29 N. E. 282, 55 Am. Rep. 871, was a bill for specific performance of a contract for the sale and exchange of city property, wherein it was agreed that complainant was to have certain policies of insurance on the buildings held by him assigned to defendant. The evidence showed that the insurance companies consented to the transfers. The contract was specifically enforced, the court presuming that the agent was willing to make the necessary indorsements of consent to this transfer. It seems that the test of the enforceability of such a contract is the ability of the party seeking its specific performance to secure the performance of the party by the third

party. When he can secure its performance and tenders a performance thereof, as here, the contract will be specifically enforced; otherwise not.

In *Arnold v. Hull,* 7 Grant Ch. (U. C.) 47, in the contract sought to be specifically enforced the land was to be paid for, in part, by an assignment of a mortgage to be obtained from a third party, and the suit was brought by the purchaser, who alleged a refusal of the mortgagee to assign. Under the circumstances the court refused to grant a decree of specific performance, but directed an inquiry whether or not the mortgagee was still willing and able to assign the mortgage, thereby indicating, as we take it, that if he was, the contract then might be specifically enforced. See, also, *Bennett v. Abrams,* 41 Barb. (N. Y.) 619; *Jacobson v. Rechnitz,* 46 Misc. Rep. 135, 93 N. Y. Supp. 173. It will not do to say that this contract cannot be specifically enforced in favor of the adult heirs on account of their failure to sign the contract. This for the reason that such was not necessary under the statute of frauds, aside from the question of whether or not the taking possession of the land by defendant under the contract was sufficient to take it out of the statute.

In *Woodward v. Aspinwall,* 5 N. Y. Super. Ct. 272, the court, after speaking to the doctrine that the court may in a proper case decree a specific performance where there is a covenant on on side, and no mutuality, said:

"* * * 'It must be admitted that such is the settled rule of the court, although seriously questioned by Lord Redesdale upon the ground of mutuality.' And he adds: 'That these cases are supported, because the statute of frauds only requires the agreement to be signed by the party to be charged, and that the filing of the bill renders the agreement mutual.' * * *"

We are therefore of opinion that the terms of the contract of May 28, 1912, were as stated, and were capable of specific performance; that defendant's subsequent bid at the guardian's sale

of the land, in effect, that he would pay $909.09 for the interests therein of the minors, provided the adult heirs would accept for their interests the remainder of the $3,000 agreed to be paid for the whole tract, was made pursuant to, and in keeping with, the terms of said contract, and added nothing thereto, and that plaintiff, having secured the consent of the county court to pass title to the interests of her wards therein, and also the consent of the adult heirs to do likewise, and having tendered deeds conveying the same to defendant, that the judgment of the trial court in decreeing a specific performance thereof was right, and should be affirmed; that is, if there was thereby tendered defendant a merchantable title to the lands as stipulated in said contract. On this point defendant contends that such was not tendered him, because he says, the probate court of Oklahoma county was without jurisdiction to appoint Elizabeth B. Theimer guardian of these minors, for the reason that her petition to be appointed failed to state that the minors were residents of said county, and hence the sale of their interest in the land by order of that court is void, and the guardian without authority to pass the title. As this is a collateral attack for an alleged defect in jurisdiction apparent on the face of the record, whether or not the fact of residence should have been averred in the petition turns upon the question of whether the probate courts of this jurisdiction were at that time of general or special or limited jurisdiction. If the latter, no presumption is indulged in favor of their jurisdiction, and the fact should have been averred. If of the former, the presumption of their residence in that county will be indulged, and the fact need not have been averred. 17 Am. & Eng. Enc. Law, p. 1082, says:

"The rule with respect to courts of special and limited authority is that their jurisdiction is never presumed, but must affirmatively appear by sufficient evidence or proper averment in the record, or their judgments will be deemed void on their face. * * *"

Whether the one or the other their proceedings are to be deemed construed as proceedings of courts of general jurisdiction. This for the reason that section 6190 provides:

"The proceedings of this court are construed in the same manner, and with like intendments, as the proceedings of courts of general jurisdiction, and to its records, orders, judgments and decrees, there are accorded like force, effect and legal presumption as the records, orders, judgments and decrees of district courts."

In *Monastes v. Catlin,* 6 Or. 119, the case turned on the question here involved. In that state it was held that the county court of Columbia county was a court of general jurisdiction. The defect complained of was one of the face of the record, as here. The court said:

"If it was a court of limited jurisdiction, its jurisdiction over the person of Peggy McClane not appearing on the face of the order, and not having been shown by proof *aliunde,* its proceedings were void. On the other hand, if it was a court of general jurisdiction, its jurisdiction is presumed, and its records 'import absolute verity, and cannot therefore be collaterally impeached from without' (*Hahn v. Kelly,* 34 Cal. 402 [94 Am. Dec. 742]), and 'when the record is silent as to what was done, it will be presumed that what ought to have been done was not only done, but rightly done.'"

At the time of the defect complained of in *Redmond, Guard., etc., v. Anderson,* 18 Ark. 450, the probate courts of that state were also courts of general jurisdiction. In the syllabus of that case it is said:

"The presumption is in favor of the regularity of the proceedings of probate courts, they being placed upon the same footing of superior courts (*Borden et al. v. State, Use, etc.,* 11 Ark. 557 [44 Am. Dec. 217]); and, nothing appearing in the record to the contrary, an order of sale and conveyance of a slave belonging to minors will be presumed to have been authorized upon a sufficient showing, and for the benefit of the minors."

See also, *Currie v. Franklin,* 51 Ark. 338, 11 S. W. 477.

From all of which we see the presumption is the way other than defendant contends, and in favor of, rather than against, the jurisdiction of the court. At the time of the rendition of the opinion in *Cox v. Boyce,* 152 Mo. 582, 54 S. W. 468, 75 Am. St. Rep. 483, the probate court of Missouri were also courts of general jurisdiction. In that case the court said:

"This is a collateral attack on the judgment of the probate court, and cannot prevail unless it appears that the court was without jurisdiction of the case. Sometimes the question of jurisdiction in a particular case is a question of venue, and that may be a question of fact to be decided in the first instance by the court whose jurisdiction is invoked. Probate courts have jurisdiction to appoint curators for minors to administer their estates. When application for the appointment of a curator is made, the probate court is to satisfy itself if the minor is a resident of the county, and, if the court makes the appointment, the presumption is that it heard the evidence and found the fact to justify its appointment. Unless it appears on the face of the record that the minor was not a resident of the county, *the* proceedings of the probate court cannot be attacked collaterally on that ground."

In *Bush v. Lindsey,* 24 Ga. 245, 71 Am. Dec. 117, the question here presented was there decided. The court said:

"Was the court right in receiving as evidence the exemplification from the court of ordinary of Talbot county, showing the appointment of Pate as guardian of Hays, and an order authorizing him to sell the land? The objection to the exemplification was that it did not show upon its fact that the ward lived in Talbot county, or had property therein, at the time of the appointment or of the order, and, consequently, that it did not show upon its face, anything to give jurisdiction to that court to make the appointment and pass the order. It is sufficient if the court had jurisdiction; it is not necessary that what gave it jurisdiction should appear on the face of its proceedings. The court of ordinary is, and has always been, a court of general jurisdiction.

Mrs. Pate says that she 'lived in Jones county when the draw was given in for; the ward, her child, then being only three months old.' In this it is implied that she has since ceased to live there, and has come to live elsewhere. There is nothing to show that this other place was not Talbot county. It does not appear that Pate, her husband, the person appointed the guardian, ever lived in Jones; it does not appear where he at any time, lived. It may well be, therefore, that he and Mrs. Pate and the child were all living in Talbot county at the time when his appointment as guardian was made, and at the time the order of sale was passed. But, the court being of general jurisdiction, it is necessary to presume, in the absence of proof to the contrary, that at these times, the ward did reside in Talbot county, or did have property in that county; in short, to presume that something existed which gave the court jurisdiction. The court, then, was right in receiving the exemplification."

See, also, *Johnson v. Beazley,* 65 Mo. 250, 27 Am. Rep. 276.

This seems to be the holding of the courts where the probate courts granting the letters are courts of general, as distinguished from courts of special, jurisdiction. See *Ames et al. v. Williams et al.,* 72 Miss. 760, 17 South. 762, and cases cited in note 4, Am. & Eng. Enc. of Law, *supra.*

There is no merit in the contention that the trial court erred in aiding the presumption that the minors were residents of the county at the time of the appointment by admitting parol evidence establishing such as an undisputed fact. This for the reason that such presumption required no evidence to support it, and to do so, if error, was, harmless.

Since writing the above, we see the same is in keeping with what has heretofore been said by this court. *Holmes et al. v. Holmes et al.,* 27 Okla. 140, 111 Pac. 220, 30 L. R. A. (N. S.) 920, was a suit in which the brothers of deceased set up title to his land and sought partition thereof among themselves to the exclusion of his widow, who claimed therein a homestead. They

contended the order setting aside the homestead to her was void because made without notice to them. But the court, in holding not so, said:

"Whether the order of the probate court setting aside to defendant in error the homestead was made without notice to the heirs is not presented by the pleadings. No allegation to that effect is made in plaintiffs' petition. Defendant attaches to her answer as an exhibit said order, and the order fails to recite that notice was given; but failure of the order to recite that notice was given to the heirs, if such notice to them is jurisdictional (which we do not decide), does not impeach the order, for, by section 1478, Wilson's Rev. & Ann. St. 1903, it is provided that the proceedings of a probate court are to be construed in the same manner and with like intendments as the proceedings of courts of general jurisdiction, and records, orders, judgment, and decrees shall be accorded like force, effect, and legal presumption as to the records, orders, judgments, and decrees of district courts. And the orders and decrees of the probate court need not recite the existence of facts or the performance of acts upon which the jurisdiction of the court depends. Section 1780, Wilson's Rev. & Ann. St."

There is no merit in defendant's contention that the appointment of this guardian was void on account of a failure to give notice thereof to the relatives of the minors residing in the county, as required by Rev. Laws 1910, sec. 6522. This for the reason that the probate court, in making the appointment, recited in the order of appointment that such notice was given. If in the *Holmes Case, supra,* in the absence of such recitation, we can presume that the notice there was given, it will be presumed here, where the order recites the fact that it was given.

But it is urged the additional bond ordered by the court to be given pursuant to Comp. Laws 1910, sec. 5509, is void for the reason that the same was made payable to the state of Oklahoma and conditioned as aforesaid, and was not conditioned to sell the real estate in the manner and to account for the proceeds of the

sale, as provided in articles 8 and 15, chapter 86, Comp. Laws 1909, and therefore the sale is of no effect. But the court held not so, and that the defect in the bond, if such there was, "is not a material or jurisdictional step in the sale, and the defect therein contained, if any, was cured by the order of confirmation." Comp. Laws 1909, sec. 5509, is section 6564, Rev. Laws 1910, and reads:

"Every guardian authorized to sell real estate, must, before the sale, give bond to the county judge, with sufficient surety, to be approved by him, with condition to sell the same in the manner and to account for the proceeds of the sale as provided for in this article."

The articles referred to in section 5509 are articles 8 and 15 of chapter 86, Comp. Laws 1909. The article referred to in section 6564 is article 14, chapter 64, Rev. Laws 1910. There is no merit in the contention that this bond, conditioned as it is, that the guardian "shall faithfully execute the duties of her trust according to law," is not conditioned as required by statute, which requires it (section 5509) to be conditioned "to sell the same in the manner and to account for the proceeds of the sale as provided for in this article and article 8 of this chapter." This for the reason that both conditions mean substantially the same thing. The validity of the bond, as a statutory bond, is not impaired by reason of the fact that it was taken to the state of Oklahoma instead of to the county judge, as required by the statute. This point is settled in this jurisdiction. In *Thompson v. Grider I. Co. et al.*, 36 Okla. 165, 128 Pac. 266, in the syllabus, we said:

"Under sections 6164 and 6165, Comp. Laws 1909, which requires public officers, upon entering into contracts, to take bonds running to 'the state of Oklahoma,' requiring the contractor to pay for all labor and material in the building, and permitting suit on the bond to be brought by any one who furnishes labor or material, a bond, which runs to the trustees of the school district, instead of to the state of Oklahoma, is a valid compliance with the statute."

We are therefore of opinion that the court was right in holding, in effect, that there was tendered defendant a merchantable title to the land in question, and decreeing a specific performance of the contract, and for that reason the judgment should be affirmed.

And, inasmuch as the trial court failed to give judgment that the bank turn over to the guardian the $500 check deposited by the purchaser upon the execution and delivery of the deeds tendered, the judgment of the trial court is affirmed, with judgment here requiring the bank so to do.

All the Justices concur.