## HATHAWAY *et al.* v. HOFFMAN *et al.*

No. 5070. Opinion Filed November 9, 1915.

Rehearing Denied February 1, 1916.

(153 Pac. 184.)

1. **GUARDIAN AND WARD — Appointment — Collateral Attack.**
Where, in an action of ejectment joined with one to clear title, plaintiffs, in order to prove title in themselves, assailed the validity of the record of the county court appointing for them a guardian, who, as such, pursuant to an order of the court, had subsequently sold and conveyed the land in controversy to defendant's grantee, **held,** that such was a collateral attack, and that the record, being one of a court of general jurisdiction as to probate matters, could not be impeached by evidence **aliunde.**

2. **TRIAL—Direction of Verdict—Incompetent Evidence.** Where, assailing the record of a county court, plaintiff introduced parol evidence **aliunde,** over objection, that the minors for whom a guardian had been appointed by the court resided at the time of the appointment in a county other than the county in which the appointment was made, **held,** that the court did right, in directing a verdict for the defendant, to lay that evidence out of the case and in effect hold that such was incompetent and without probative force to impeach the validity of the record.

3. **GUARDIAN AND WARD—Appointment of Guardian—Jurisdiction—Presumption.** The appointment of a guardian for minors by a county court imports jurisdiction in the court so to do, and it will be inferred from the fact that such an appointment was made that all the facts necessary to vest the court with jurisdiction to make the appointment had been found to exist before the same was made.

4. **SAME—Validity of Acts—Collateral Attack.** Where the records of the county court disclose that letters of guardianship were issued and duly recorded, that the guardian gave bond, duly qualified, and entered upon the discharge of his duties as such, as required by law, the guardian's acts will be held valid, when collaterally attacked, although the record may fail to disclose any other evidence of his appointment.

(Syllabus by the Court.)

*Error from District Court, Coal County;*
*Robert M. Rainey, Judge.*

Action by Ira Hathaway and others against John W. Hoffman and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

*C. M. Threadgill* and *Geo. A. Fooshee,* for plaintiffs in error.

*E. R. Jones, Arthur Miller,* and *J. G. Ralls,* for defendants in error.

*J. R. Cottingham, S. W. Hayes,* and *C. M. Oaks, amici curiae.*

TURNER, J. On February 17, 1912, in the district court of Coal county, Ira Owen and Earl and Ellis Hathaway, minors, by their guardian, Mary E. Hathaway, plaintiffs in error, sued J. W. Hoffman, and the remaining defendants in error, in ejectment for a two-thirds undivided interest in a certain 90-acre tract of land (describing it), a part of the town site of Clarita in said county. In the petition, among other things, they allege, pursuant to act approved January 25, 1911 (Sess. Laws 1911, c. 10, p. 25), that the land belongs to said minors; that defendants are in possession and claim an adverse interest therein in virtue of a sale and conveyance thereof by one Teubner, as guardian, to one Lowerre, from whom they deraign title; that said sale was made by said Teubner purporting to act under appointment as guardian of said minors and an order of sale of the county court of Atoka county, which said appointment they allege was void because, they say, at the time it was made they were residents of Coal county, and hence the court was without jurisdiction to make it and order a sale of the property, and they pray that they be repossessed and their title to the land be cleared. There is no fraud charged. As exhibits to their petition they file the record and proceedings of the county court which they assail.

After demurrer to the petition filed and overruled, defendants answered, in effect a general denial, and for a defense set up and rely upon the records and proceedings assailed, and upon the jurisdiction of the county court of Atoka county to make the appointment and order the sale of the land, which they admit was purchased by Lowerre, and they admit that they deraigned their title as stated in the petition.    After issue joined by reply there was trial to a jury, and at the close of the evidence a directed verdict for defendants, and plaintiffs bring the case here.

Among other assignments plaintiffs say the court erred in thus directing the verdict.    On this point the record discloses that, assailing the record and proceedings of the county court introduced in evidence and which fail to disclose the residence of the minors at the time the appointment complained of was made, plaintiffs, over objection, introduced evidence reasonably tending to prove that in August, 1908, Elzie Hathaway died in Atoka county, leaving him surviving his children, the minors in question, all under the age of 14 years, also Mary E. Hathaway, his widow; leaving also as a part of his realty, the land in question, situated in Coal county; that on December 6, 1908, said Mary E. Hathaway married one Wisner in that county and continued to live there until about January 5, 1909, when the family, consisting of these minors, the mother and Wisner, moved from Atoka county to Coal county, where they resided until some time in October, 1909; that while they were living in Coal county, to wit, on May 5, 1909, R. L. Teubner, a resident of Atoka county, on petition filed in the county court of that county, was appointed guardian of said minors, and thereafter, acting under orders of that court, as such guardian, sold and conveyed the land in controversy to one Lowerre, from whom defendants

deraigned their title as stated in the petition.  The record of the county court of Atoka county being silent as to the *factum* of the residence of the minors at the time said appointment was made, and the court being one of general jurisdiction as to matters probate, the trial court did right in passing on the motion to direct a verdict, to lay out of the case said evidence as to the residence of the minors at the time the appointment was made and hold, as he did, in effect, that such was a collateral attack on the record of that court, which, importing as it does absolute verity, was not subject to be impeached by evidence *aliunde*.   In *Clinton Nat. Bank v. McKennon*, 26 Okla. 836, 110 Pac. 649, we said:

"It is the duty of the court in directing a verdict to lay out of consideration incompetent testimony received over objection."

The record of the county court being silent as to the residence of these minors at the time this appointment was made, it is but fair to presume, in aid of the jurisdiction of the court to make the appointment, that the court before making it took evidence, as was its duty to do, and found the facts to be that their residence at that time was in Atoka county.   For it is said in the headnote to *Grignon's Lessee v. Astor et al.*, 2 How. 319, 11 L. Ed. 283:

"It is for that court to decide upon the existence of the facts which gave jurisdiction; and the exercise of the jurisdiction warrants the presumption that the facts which were necessary to be proved were proved.   The distinction examined between courts of limited jurisdiction, where the record must show that jurisdiction was rightfully exercised, and courts of general jurisdiction, where the record being silent upon the subject, it will be presumed that jurisdiction existed."

Quoting approvingly from *Cox v. Boyce,* 152 Mo. 582, 54 S. W. 467, 75 Am. St. Rep. 483, in *Rice v. Theimer et al.,* 45 Okla. 618, 146 Pac. 702, and in *Baker v. Cureton,* 49 Okla. 15, 150 Pac. 1090, we said:

"* * * When application for the appointment of a curator is made, the probate court is to satisfy itself if the minor is a resident of the county, and if the court makes the appointment, the presumption is that it heard the evidence and found the fact to justify its appointment. Unless it appears on the face of the record that the minor is not a resident of the county, the proceedings of the probate court cannot be attacked collaterally on that ground."

This is in keeping with what this court has always held. In *Greer et al. v. McNeal et al.,* 11 Okla. 519, 69 Pac. 891, in the syllabus the court said:

"It is not necessary that in proceedings properly before the probate court and within its jurisdiction, its judgment shall contain a recitation of the facts upon which the jurisdiction of the court depends. A final judgment of the probate court imports jurisdiction, and it will be inferred from the fact that such a judgment was rendered, that all the facts necessary to its proper rendition had been found to exist before the judgment was rendered." *Holmes et al. v. Holmes,* 27 Okla. 140, 111 Pac. 220, 30 L. R. A. (N. S.) 920.

In aid of the presumption of the jurisdiction of the county court to make the appointment, we will presume the court not only heard, but passed upon, evidence of the same facts disclosed in this collateral attack, in effect, that, after the death of the father of these minors in Atoka county, their mother married again there, and the family as thus constituted took up their residence in Coal county; that they were living there at the time the appointment was made; and that thereupon the court held the law to be

that the residence of these minors at that time was in Atoka county. And assuming, as is contended, that such was an erroneous decision of the jurisdictional fact of residence, it does not follow that the subsequent action of the court in exercising jurisdiction in making the appointment was an usurpation of jurisdiction where none existed, but at most it was error, to be corrected on appeal from the order of appointment, and cannot be declared void on collateral attack. But right here, while the great weight of authority supports what we have said, there is authority to the contrary. In an exhaustive note to *Jordan v. Chicago, etc., R. Co.,* 4 Ann. Cas. at page 1117, the learned annotator says:

"Pursuant to the doctrine that courts of probate, or such courts as have jurisdiction of administrations, are courts of general jurisdiction within their peculiar sphere, it is generally held that their decrees, granting letters testamentary or of administration on the estates of deceased persons, are conclusively presumed to be valid as against collateral attack, even on the ground that the court incorrectly found the jurisdictional facts, where the court had power to determine such facts and the want of jurisdiction does not appear on the face of the proceeding."

But on the next page he adds:

"* * * There is no little confusion among the authorities as to the right of collateral attack where it is claimed that the court, in granting an administration, erroneously decided some jurisdictional fact. Some cases seem to have regarded such a decision as an usurpation of jurisdiction when none existed, rendering the granting of letters totally void and subject to collateral attack. *Ewing v. Mallison,* 65 Kan. 484 [70 Pac. 369, 93 Am. St. Rep. 299], *Hall v. Louisville, etc., R. Co.,* 102 Ky. 480 [43 S. W. 698, 80 Am. St. Rep. 358], and *Jacobs v. Louisville, etc., R. Co.,*

10 Bush (Ky.) 263, are examples of this view, and others will be found throughout the note."

But we will follow the weight of authority, in support of which is *Hine v. Morse,* 218 U. S. 493, 31 Sup. Ct. 37, 54 L. Ed. 1123, 21 Ann. Cas. 782. That was a suit to determine the liability of a surety on a bond given for the faithful performance of his duties by a trustee appointed to sell the interest of a minor in real estate, decreed by a court of equity according to the prayer of the bill, for sale and reinvestment pursuant to a certain statute in force in the District of Columbia. To the decree of sale it was urged that the court was without jurisdiction to make it under another statute relied upon. In support of its jurisdiction the court said:

"The Supreme Court of the district had jurisdiction over the subject-matter, the *res.* It had jurisdiction over the parties. It was, according to due course of equity proceeding, called upon to examine the will and the statute which gave the power to make the sale in certain circumstances. If, then, jurisdiction consists in the power to hear and determine, as has so many times been said, and the court errs in holding that a case has been made either under its inherent power or its statutory authority, can it be said that it has usurped jurisdiction, and that its decrees are absolute nullities? To this we cannot consent. If the court was one of general, and not special, jurisdiction, if, under its inherent power, supplemented by statutory enlargement, it has jurisdiction under any circumstances to sell the real estate of minors for reinvestment, it had jurisdiction to examine and determine whether the particular application was within or beyond its authority. To do this was jurisdictional. If it errs, its judgment is reversible by proper appellate procedure. But its judgment, until it be corrected, is a judgment, and cannot be regarded as a nullity."

We are therefore of opinion that the court did right in holding that the absolute verity of the record of the county court could not be impeached by evidence *aliunde,* and in sustaining the demurrer to the evidence unless, as it is contended, said record on its face discloses that Teubner acted as guardian of the minors in the sale of this land without appointment. But such he did not, for the reason that his letters of guardianship were introduced in evidence and read:

"Letters of Guardianship.

"In County Court.

"State of Oklahoma, County of Atoka—ss.:

"In the Matter of the Guardianship of Ira, Owen, Earl, and Ellis Hathaway, Minors.

"L. R. Teubner is hereby appointed guardian of the persons and estates of Ira, Owen, Earl, and Ellis Hathaway.

"Witness, J. H. Linebaugh, judge of the county court of Atoka county, State of Oklahoma, with the seal thereof affixed, this 10th day of July, A. D. 1909.

"[Seal]          J. H. LINEBAUGH, *County Judge.*"

"State of Oklahoma, County of Atoka—ss.:

"I, L. R. Teubner, do solemnly swear that I will discharge all and singular the duties of guardian of the persons and estates of Ira, Owen, Earl, and Ellis Hathaway according to law, and to the best of my ability, so help me God.                    L. R. TEUBNER.

"Subscribed and sworn to before me, this 10th day of July, A. D. 1909.

"[Seal]          J. H. LINEBAUGH, *County Judge.*"

These letters are sufficient to show his appointment, and were duly recorded in Guardian's Record Book No. 1, at page 98. Besides, as the record further discloses that he gave bond and qualified and entered upon the discharge

of his duties as guardian with the approval of the court, his acts, as such, cannot be collaterally attacked. In *Howbert v. Heyle*, 47 Kan. 58, 27 Pac. 116, in the syllabus it is said:

"Where letters of guardianship are issued and recorded in the probate judge's office, and the guardian gives bond, and duly qualifies and enters upon the discharge of his duties as guardian, with the approval of the probate judge, and all this is of record, the guardian's acts will be held valid when attacked collaterally, although there may not be any further record in the probate judge's office of his appointment."

And to the same effect is Woerner in his work on The American Law of Guardianship, section 35, and *Harrison v. Miller*, 87 Kan. 48, 123 Pac. 854, and *Brack v. Morris*, 90 Kan. 64, 132 Pac. 1185.

And plaintiffs' action is a collateral attack on the record of the county court in the matter, of the appointment of Teubner as guardian and the subsequent proceedings therein resulting in the sale of the land in controversy. We say this for the reason that, primarily, the action is one in ejectment joined with one against certain parties defendant who claim an estate or interest in the land adverse to plaintiffs', for the purpose of determining such interest and canceling the evidence thereof as a cloud on plaintiffs' title pursuant to act approved January 25, 1911, which was not intended to authorize such attacks or to correct such proceedings. Being compelled to recover, if at all, on the strength of their own title, the burden was on plaintiffs to prove title in themselves, for it is settled that title in the plaintiff is essential to a recovery both in an action in ejectment and to remove a cloud. *Lewis v. Clements*, 21 Okla. 167, 95 Pac. 769. In attempting so to do the record of the

county court arose incidentally, whereupon they assailed it and sought to avoid its force and effect in the manner stated, recognizing the fact that proof of title in themselves turned upon the question of the validity of the record assailed. We shall enter into no prolonged discussion to show that such was a collateral attack. It is sufficient to quote from *Continental Gin Co. v. De Bord,* 34 Okla. 66, 123 Pac. 159, where we said:

"A 'direct attack' on a judicial proceeding is an attempt to avoid or correct it in some manner provided by law.

"A 'collateral attack' on a judicial proceeding is an attempt to avoid, defeat, or evade it, or deny its force and effect in some incidental proceeding not provided by law for the express purpose of attacking it."

—and to cite *Sockey et al. v. Winstock et al.,* 43 Okla. 758, 144 Pac. 372; *Johnson, Adm'r, v. Filtsch et al.,* 37 Okla. 510, 138 Pac. 165; *Brown et al. v. Trent et al.,* 36 Okla. 239, 128 Pac. 895; *Continental Gin Co. v. De Bord,* 34 Okla. 66, 123 Pac. 159; *Steele et al. v. Kelly et al.,* 32 Okla. 547, 122 Pac. 934; *Eaves v. Mullen,* 25 Okla. 679, 107 Pac. 433; *Spade v. Morton et al.,* 28 Okla. 384, 114 Pac. 724.

Before closing it might be well to say that, although the record is silent on whether the judge of the county court, before making the appointment, gave notice to the relatives of the minors residing in the county, as required by Rev. Laws 1910, sec. 6522, in aid of the jurisdiction of the court to make the appointment, we will presume either that he did so *(Holmes v. Holmes, supra),* or that he took evidence, as was his duty to do, before making the appointment, and found as a fact that they had no relatives there residing, and hence there were no such relatives to whom he could give notice, and hence we say there is no

merit. in the contention that the appointment is void because the record fails to disclose such notice was given *(Rice v. Theimer, supra)*.

Finding no merit in the remaining assignments of error, the judgment is affirmed.

All the Justices concur, except THACKER, J., not participating.