**BOWLING et al. v. MERRY.**

No. 11167—Opinion Filed July 3, 1923.

**1. Guardian and Ward — Statutory Provision.**

Section 1814, Wilson's Revised and Annotated Statutes of Oklahoma, 1903, provides: "The probate court of each county, when it appears necessary or convenient, may appoint a guardian for persons or estates, or either or both of them, of minors who have no guardian legally appointed by will or deed, and who are inhabitants or residents of the county, or who reside without the territory and have an estate within the county."

**2. Same — Probate Court — Jurisdiction— Termination of Guardianship.**

Section 1820, Wilson's Revised and Annotated Statutes of Oklahoma, 1903, provides: "Every guardian appointed shall have the custody and care of the education of the minor and the care and management of his estate, until such minor arrives at the age of majority or marries or until the guardian is legally discharged."

Held, under this section a guardian may be legally discharged by order of the court from the application of the guardian and after due notice, where it appears to the court there was no necessity for the continuance of the guardianship.

**3. Judgment — Motions — Record — Nunc Pro Tunc Orders — Jurisdictions.**

Jurisdiction is inherent in every court of record to cause its records to speak the truth and by nunc pro tunc order, on proper application and notice, to cause to be entered orders and judgments made by the court which, by inadvertence or mistake, the clerk of the court has omitted to record, and this right is not lost by lapse of time, where no intervening rights are affected.

**4. Motions — Orders — Nunc Pro Tunc Entry.**

A nunc pro tunc entry imports the same verity and proves the contents of an order previously made as effectively and conclusively as if such order had been entered of record when made.

**5. Guardian and Ward—Termination of Relation—Majority of Ward—Statute.**

Section 3340, Rev. Laws 1910, provides: "After a ward has come to his majority, he may settle accounts with his guardian and give him a release, which is valid if obtained fairly and without undue influence."

**6. Guardian and Ward — Appointment of Guardian—Jurisdiction—Presumption.**

The appointment of a guardian for a minor by a county court implies jurisdiction in the court so to do; it will be inferred from the fact that such an appointment was made that all the facts necessary to vest the court with jurisdiction to make the appointment has been found to exist before the same was made.

**7. Guardian and Ward—Sale of Property —Rights of Innocent Purchaser.**

A purchaser at a guardian's sale, if the proceedings relating thereto are regular on their face, may not be ousted of his title by reason of fraud of the guardian inducing such sale, where the purchaser did not have knowledge or participate in such fraud.

**8. Guardian and Ward — Sale of Property —Regularity.**

Where the proceedings of the county court are conceded to be regular on their face, such proceedings may not be subject to collateral attack upon the ground that the findings upon which the jurisdiction was based were untrue.

**9. Judgment—Collateral Attack—Courts of Record—County Courts.**

County courts of this state are courts of record and have original general jurisdiction in probate matters. The orders and

Judgments of such courts when acting within their jurisdiction are entitled to the same favorable presumption and the same immunity from collateral attack as are accorded courts of general jurisdiction.

### 10. Courts — Probate Courts — Jurisdiction —Presumption.

Unless the record affirmatively shows want of jurisdiction, and every fact not negatived by the record is presumed in support of the judgment of a court of general jurisdiction, and where the record of the court is silent upon the subject, it must be presumed in support of the proceedings that the court inquired into and found the existence of facts authorizing it to render the judgment which it did.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Rogers County; C. W. Mason, Judge.

Action by Annie Merry, nee Tadpole, against T. C. Bowling et al. for possession of land. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

Langley & Langley and Jennings, Paul & Batten, for plaintiffs in error.

Robson & Bayless and H. H. Brown, for defendant in error.

Opinion by RUTH, C. This was an action instituted in the district court of Rogers county in 1918, by the defendant in error, Annie Merry, against T. C. Bowling et al. for the possession of land in Rogers county. For convenience, the parties hereto will be designated as they appeared in the court below.

The plaintiff in her petition sets forth that she was a Cherokee allottee of certain lands in Rogers county, and was entitled to the possession thereof, and that the defendants unlawfully withheld possession thereof from her for seven years, and she attaches to the petition her allotment deed to said land, and asks the court to decree that she is the legal and equitable owner of said lands, and entitled to immediate possession thereof, and that she have judgment against the defendants for said lands, and further, judgment for the sum of $700 for the use and occupancy of said lands for a period of seven years.

To the petition of the plaintiff, the defendants Bowlings filed their separate answer, in which they answer by general denial, and for further answer say that on the 18th day of March, 1911, Eli Tadpole (father of plaintiff) was the duly appointed, qualified, and acting guardian of the plaintiff, and, as such, sold the lands involved to this defendant, and that the same were sold under the order of the probate court of Rogers county, who had appointed the said Eli Tadpole as guardian, and that on the 29th day of March, 1911, the county court of Rogers county duly approved and confirmed the sale and ordered the guardian to execute to the defendant a guardian's deed, which was accordingly done, and which is attached to the answer and made a part thereof, together with the order confirming the sale, etc.

It was disclosed by the record that Annie Merry, plaintiff, was the daughter of Eli Tadpole, and that Eli Tadpole was appointed guardian of his daughter in Mayes county on the 30th day of September, 1908. The record is not clear as to whether or not Annie Merry owned any land in Mayes county, but it does appear from the record that an order was made directing and authorizing Eli Tadpole, the guardian, to sell the ward's land, but what land it referred to is not shown by the record, but it does appear that the sale was not consummated or confirmed, and upon this being shown to the court, the court ordered the guardianship discharged and terminated and the case was marked "Closed." This part of the record, showing that the guardianship was terminated and discharged, except for the word "closed" appearing on the appearance docket, appears only in the record by nunc pro tunc order entered by the county court of Mayes county in 1919, just prior to the trial of this cause, and the nunc pro tunc order is as follows, omitting the caption:

"Now, on this the 2nd day of September, 1919, the above entitled cause comes on for hearing upon the petition of T. C. Bowling, for an order of this court entered as of the 11th day of December, 1908, discharging Eli Tadpole, as guardian in the above entitled cause, and it being first proven to the satisfaction of this court that notice of this hearing was given to the above named Annie Tadpole, now Annie Merry, and to the said Eli Tadpole, on the 21st day of August, 1919, and the said T. C. Bowling, appearing in person and by his attorneys, Langley & Langley, and the said Annie Tadpole, now Annie Merry, each failing to appear, or except or object to this petition, and the evidence having been offered in support of said petition, the court finds from said evidence that all the allegations of said petition are true, and finds that the said Eli Tadpole was by the above entitled court duly discharged as such guardian, on the 11th day of December, 1908, and the

court finds that said petition should now be sustained.

"It is therefore ordered by the court that the journal entry of order made by the court on the 11th day of December, 1908, be, and the same is hereby entered upon the journal of this court as of date of December, 11th, 1908, with the same force and effect as though entered on that date, in words and figures, as follows:

"'And now. on this 11th day of December, 1908, the above entitled cause came on for hearing upon the application of Eli Tadpole, guardian, to be discharged from said guardianship trust, the said guardian appearing in person and by B. Kirkpatrick, his attorney, and the court having heard the evidence of the parties, finds the guardian has come into possession of no property belonging to his ward, and said wards have no property except their real estate, and to sell some inherited interests belonging to said wards in some real estate, this guardianship was instituted, and said sale having failed, there is no longer any necessity for this guardianship, and the court being fully advised in the premises, it is hereby ordered that the said guardian be, and he is hereby discharged of and from his said trust. and 'he sureties upon his bond are hereby released and the above entitled cause is fully closed.

"'(Seal) T. L. Marteney, County Judge.'"

The record further discloses that after Eli Tadpole was appointed guardian 'he, with his daughter and ward, moved into Rogers county and there filed a petition to have Eli Tadpole appointed guardian of the estate of Annie Merry, nee Tadpole. It would appear that the application was regularly made for the appointment of Eli Tadpole as guardian of Annie Merry in Rogers county, and that he was duly appointed guardian and was by the order of the court duly authorized to sell the property in question, and upon making his return to the court, the sale was confirmed and the guardianship deed then ordered to issue, which was accordingly done.

It further appears that Annie Merry, at the time her guardian filed his final accounting, had attained her majority, having reached the age of 18, and by the further fact that she had married; that upon filing of the final account of her guardian she appeared in court and was questioned by the court and stated to the court that she understood thoroughly the nature of the proceedings; that she understood the land had been sold, was thoroughly familiar with the price obtained therefor, and was satisfied with the administration of her affairs by the guardian. Subsequent thereto she brings this action against Bowling and Randolph to recover possession of the land. The evidence discloses the fact that Bowling is an innocent purchaser for value; that he subsequently sold the land to Randolph, who was an innocent purchaser for value.

The first question raised, and to our mind the only question to be determined in this court, is whether or not the county court of Rogers county had jurisdiction to appoint a guardian over the person and estate of Annie Merry at the time of the said appointment, and to order the sale of the ward's land. Several questions are asked by the parties hereto in their briefs, and incidentally involved in this paramount question:

(1) Did the county court of Mayes county have power to close the estate and suspend or release the guardian? (2) Did the county court of Mayes county have power to correct its records by nunc pro tunc order? (3) Did the plaintiff in error, Bowling, he not having been a party to the guardianship proceedings in Mayes county, have the power to petition the county court of Mayes county for a correction of its records by nunc pro tunc order?

It would appear from an examination of the briefs that the parties to this proceeding were relying upon section 3339, Revised Laws of Oklahoma 1910, which provides:

"The power of a guardian by court is suspended only:

"First, by the order of the court.

"Second. if the appointment was made solely because of the ward's minority, by his attaining his majority.

"Third, the guardianship over the person only of the ward, by the marriage of the ward."

And the defendant in error appears to be relying upon section 6198, Rev. Laws of Oklahoma 1910, which provides that where the domicile of the minor or ward has been changed from the county where the guardianship is pending to another county in the state, the guardianship may be removed to such other county, which would be the proper venue, etc.

Section 6579, Revised Laws of Oklahoma, 1910, provides:

"The guardian of an insane or other person may be discharged by the judge of the county court when it appears to him, upon the application of the ward or otherwise, that the guardianship is no longer necessary."

It would therefore appear that even though the Laws of 1910 apply in this case, the county court would have authority to terminate the guardianship when it appeared to that court that a guardianship was no longer necessary, and in the nunc pro tunc order it is recited that the court finds there is no necessity for the guardianship, and therefore terminates the guardianship and releases the sureties on the guardian's bond.

The law of this state in force at the time of the appointment of the guardian in Mayes county is lifted verbatim from the California Civil Code of Procedure, section 1753, and section 1820, of Wilson's Revised and Annotated Statutes of Oklahoma, 1903, provides as follows:

"Every guardian appointed shall have the custody and care of the education of the minor, and the care and management of his estate until such minor arrives at the age of majority, or until the guardian is legally discharged."

The question then arises, What constitutes a legal discharge of the guardian? and this can be gathered from the intent of the Legislature, and we find in the acts of our Legislature after this territory was erected into a state, that it was provided that the guardianship might be discharged when such guardianship was found to be no longer necessary.

Sections 12 and 13, art. 7, of the Constitution conferred upon them original jurisdiction in probate matters until otherwise provided by law, and section 23 of the Schedule also provides:

"When this Constitution shall go into effect, the books, records, papers and proceedings of the probate court in each county, and all causes and matters of administration and guardianship, and other matters pending therein, shall be transferred to the county court of said county, except of Day county, which shall be transferred to the county court of Ellis county, and the county courts of the respective counties shall proceed to final decree or judgment, order or other termination in the said several causes as the said probate court might have done if this Constitution had not been adopted."

It will thus be seen that the law in force at the time of the adoption of the Constitution prevailed at the time of the appointment of the guardian in Mayes county in September, 1908, and at the time in which the order should have been entered discharging the guardian and releasing the sureties, to wit, December 11, 1908; and under the law in force at that time, the guardian might be legally discharged by order of the court. This act being lifted bodily from the laws of California, the California decisions will at least be persuasive upon this court in determining whether or not the county court may discharge the guardianship, where it is found there is no necessity for the same, and in Cook v. Ceas (Cal.) 77 Pac. 65, in the body of the opinion, Chief Justice Shaw, in construing this statute says:

"The court are of the opinion that by the term 'discharged' in this statute, is intended any mode by which the guardianship is effectually determined and brought to a close, either by the removal, resignation, or death of the guardian, the marriage of a female guardian, the arrival of a minor ward to the age of 21 or otherwise. (Citing Loring v. Alline, 9 Cush. 68.)

"This construction of the statute, in substance identical with our own, has been followed in other cases in Massachusetts, and reaffirmed as late as McKim v. Mann, 141 Mass. 507. A similar construction has been placed upon similar statutes in Michigan and Wisconsin, and perhaps other states." (and cases there cited.)

It is, therefore, from the opinion of courts of last resort of states having statutes identical with or similar to the law of this state in September and December, 1908, that they have consistently held that the guardianship might be terminated when it appeared to the court that there was no necessity for the continuance of the same, and it being shown that the county court of Mayes county found there was no necessity for a continuance of the guardianship of Annie Merry in Mayes county, the court proceeded to discharge such guardianship and "close" the case, releasing the sureties upon the bond of the guardian, and definitely terminating all proceedings in the case in Mayes county. It is therefore held that the county court of Mayes county had authority to discharge the guardianship and release the sureties on the guardian's bond when there appeared no necessity for said guardianship, and the county court of Rogers county, to which the guardian and his ward had removed and had erected their domicile, had jurisdiction to appoint a guardian and order the sale of the ward's land.

We find from an examination of the record that application was made in Mayes county by Eli Tadpole for appointment as guardian of his daughter, Annie Merry, nee Tadpole, and he was so appointed on September 30, 1908; and while the record is not clear on the question, we find that an

effort was made to sell some real estate but that the sale was never consummated, and it does not appear from the record whether the real estate so to be sold was located in Rogers county or Mayes county, there being nothing in the record to show that the ward ever had any real estate in Mayes county, and after hearing had, and no confirmation of any sale having been made, the case is marked "Closed." An examination of all the evidence in the case discloses that Eli Tadpole, the guardian, told the judge of the county court that they were going to move to Rogers county, and it appears Eli Tadpole and his ward had always lived within one-quarter of a mile of the line dividing Rogers and Mayes counties, and presumably in close proximity to the land of the ward, and exercised control of this land and farmed the same.

It further appears from the evidence that the court advised Eli Tadpole, the guardian, that it would be necessary to be appointed guardian in Rogers county when he removed across the line, and that he had communicated with the Indian probate attorney, with reference to his removal as guardian and his living in Mayes county, and his appointment in Rogers county, and that furthermore the guardian consulted an attorney and requested the attorney to do whatever was necessary to have him released as guardian in Mayes county and appointed guardian in Rogers county, and the guardian testifies that he does not know whether it was ever done or not, and it would appear to this court that certainly it was the intention of the parties to have the guardianship terminated or transferred to Rogers county, and that the guardian had taken all necessary steps and conferred with the judge of the county court of Mayes county, the Indian probate attorney, and his own attorney, to the end that such discharge or transfer should be made, and that thereafter, to wit, some three or four years, he was appointed guardian in Rogers county and proceeded to sell the land under order of the court and sale was confirmed by the court after full hearing had, and subsequently upon the filing of the final account of the guardian, the ward, having attained her majority and also having married, appeared in court with full understanding of all transactions of her guardian and acquiesced in all the proceedings and confirmed all things done by her guardian and expressed her complete satisfaction therein.

It further appears that approximately ten years after the guardianship case in Mayes county was marked "closed" by order of the court, a motion was filed by one Bowling, defendant in error, for a nunc pro tunc order, as of December 11, 1908. The question as to the right of a court to correct its record is neither a new nor a novel one in this state. It has been repeatedly held in Oklahoma, as well as in other states and in the United States courts, that courts have the inherent right to correct their records and cause them to speak the truth where by inadvertence or mistake the clerk has failed or neglected to make the proper order, and mere lapse of time does not divest the court of this right. Wright v. Nicholson, 134 U. S. 136, 33 L. Ed. 865; Gonzales v. Cunningham, 164 U. S. 612, 41 L. Ed. 572; Hyde v. Curling, 10 Mo. 359; State v. Clark, 18 Mo. 432; Nelson v. Barker, 3 McLean (U. S.) 379; State v. Bilansky, 3 Minn. 246; Bishop's New Crim. Proc. 1345; Runyan et al., v. Herrod et al., 62 Okla. 87, 162 Pac. 196; Courtney et al., v. Barnett, 65 Okla. 189, 166 Pac. 207; Bd. of Commissioners of Day County v State of Kansas, 19 Okla. 375, 91 Pac. 699. From the nunc pro tunc order in the case of guardianship of Annie Merry in Mayes county, we find that due notice of the application for the nunc pro tunc order was served upon the guardian and the ward, neither of whom appeared to resist the filing of said order nunc pro tunc, nor did they make any effort to appeal the same within the time provided by law for such appeal, and the judgment of the Mayes county court is conclusive upon this court, and we are unwilling to weaken the rule as to the conclusiveness of judgments where the court having jurisdiction of the subject-matter and the parties, renders judgment, even though it be upon insufficient evidence. It must be borne in mind also, in consideration of this case, that the rule in Oklahoma as to the evidence necessary to justify the making of a nunc pro tunc order is more liberal than the rule adopted in many of the states. Here an order for the entry of a nunc pro tunc judgment may be made upon parol evidence. Jones v. Gallagher, 64 Okla. 41, 166 Pac. 204; Clark v. Bank of Hennessey, 14 Okla. 572, 79 Pac. 217, 2 Ann. Cases, 219, and the presumption is that a judgment entered nunc pro tunc is based upon competent evidence. Belkin v. Rhodes, 76 Mo. 643; 18 Enc., Pl. & Pr. 469.

It appearing from the record that due notice was served of the application for nunc pro tunc order, and the presumption being in favor of the court's judgment, and of its conclusiveness, and that the order

nunc pro tunc was based upon sufficient competent evidence, we are brought to the consideration of the question propounded by defendants in error in their brief, to wit: Did Bowling, he not being a party to the guardianship proceedings in Mayes county, have the right to file motion for nunc pro tunc order in Mayes county? It is undisputed that Bowling purchased the ward's land in Rogers county and that the sale was confirmed by the county court of Rogers county, which court had appointed Eli Tadpole guardian of the person and estate of Annie Merry, and as the action in the instant case was brought by Annie Merry to regain possession of the lands so purchased by Bowling, certainly Bowling was such a party in interest as would entitle him to file his application in Mayes county court for a nunc pro tunc order to correct its records.

This question has been determined in this state in a well considered opinion in Board of Commissioners of Day County v. State of Kansas, 19 Okla. 375, 91 Pac. 699, where the court said:

"A person interested in the proceedings of a court of record may appear before the court at any time and ask to have the journal of the court made correct and complete as of the date such record should have been made, and the court should entertain and hear such motion upon notice given to those adversely interested."

As the plaintiff in error Bowling was the purchaser of the lands of the defendant in error at a guardian's sale, and no question or intimation of fraud is raised or even suggested in the proceeding, and as this action is brought by the former ward to regain possession of and title to said lands, surely Bowling cannot be said not to be a party in interest in a proceeding to correct the records of Mayes county, when it affects his title to the lands. In the case of Board of County Commissioners of Day County v. State of Kansas, supra, it appears that the commissioners of Day county had applied to the court for power to issue funding bonds and the proceedings for the issuance of such bonds were regular upon their face, except that the journal entry of judgment relating to the issuance of Day county funding bonds had never been entered of record. The state of Kansas had purchased these funding bonds, and upon maturity of said bonds, payment was demanded by the state of Kansas, and such payment was refused the then board of commissioners of Day county setting up as a defense that no

journal entry had ever been made or entered authorizing the issuance of said bonds; and manifestly at the time of the application for the power to issue funding bonds, the state of Kansas was not a party in interest, but after the state of Kansas had purchased the bonds and their validity was attacked, certainly the state of Kansas became such a party in interest as would entitle it to come into court and call the court's attention to an omission in the records and have the court correct the record and cause it to speak the truth by nunc pro tunc order, and in this case, while Bowling or Randolph could not in any manner have been said to have been parties in interest at the time of the appointment of the guardian in Mayes county, it cannot be said that after Bowling had purchased the land and it became necessary to correct the records of Mayes or Rogers county for the purpose of perfecting his title to the land or defending this action brought for the recovery of the land, that he was not such a party in interest to any proceeding affecting the land as would entitle him to call the court's attention to any omission in the record, for the purpose of enabling the court to make such correction by nunc pro tunc, and, as a matter of law, this court has held that courts may of their own motion, and should, make their records complete whenever the incompleteness thereof is called to their attention by any person, or in any manner comes to their knowledge. In the case of Day County v. State of Kansas, supra, this court held:

"That we know of no reason why a person interested in a judgment of a court of record should not appear before the court at any time and ask to have the journal of the court made correct and complete as of the date such record should have been made; and, we think the court should entertain and hear and determine such motion upon due notice to those adversely interested, and where as in this case, the default was originally that of the court and its officers and not of parties, we think it is the duty of the court to make its records complete at any subsequent time when the default is called to the court's attention, and that this may and should be done when justice demands without the formality of motion, as the court upon its own motion may and should make its record complete". Mitchell v. Overman, 103 U. S. 65, 26 Law Ed. 369; Borer v. Chapman, 119 U. S. 596, 7. Sup Court, 342, 30 Law Ed. 532.

It is therefore the opinion of this court that the county court of Mayes county had jurisdiction to correct its records by nunc

pro tunc order upon the application of the defendant.

The record in the instant case fails to disclose on what date the ward, Annie Merry, was married, but it does appear from the record that upon the filing of the guardian's final account in Rogers county, Annie Merry appeared in open court and certain questions were propounded to her by the court, as follows:

"Q. Annie, you are familiar with this report that has been filed? A. Yes, sir. Q. And you have checked the items of receipt that is shown here, have you? A. Yes, sir. Q. And that is correct? A. Yes, sir. Q. You have also checked the items of expenditure that are on here and the vouchers for it? A. Yes, sir. Q. And that is correct? A. Yes, sir. Q. And this amount that is shown on this report is the only amount that has been paid to you or that you have received of the money that was taken in by your father? A. Yes, sir. Q. And this amount of $687.45 is the amount that is still due you, that you should have now? A. Yes, sir. Q. How old are you? A. Eighteen past. Q. When were you eighteen? A. The 11th day of January, 1918. Q. This report was filed March 8, 1918, and notice was given to you that it was not taken up, do you now at this time waive the notice of the hearing on this report and make your appearance here? A. Yes, sir. Q. And the amount as shown by the report of your father as being the balance due to you is satisfactory? A. Yes, sir. Q. And you are satisfied for the court to approve this report as it stands? A. Yes, sir. Q. You are married now? A. Yes, sir."

It would appear, from the uncontradicted evidence, that at the time of filing the final report, the defendant in error, Annie Merry, was 18 years of age and was married, and was intelligent, and understood thoroughly the nature of the proceedings and the court explained them fully to her, and that she acquiesced in the proceedings of the court, and that all matters pertaining to her estate were completely satisfactory to l er, and we feel that she is estopped from coming into court at this time and asking the court to set aside the transfer of land under the guardian's sale made under authority of a court of competent jurisdiction, after such acquiesence and personal examination by the court.

Section 3340, Revised Laws of Oklahoma 1910, provides:

"After a ward has come to his majority, he may settle accounts with his guardian and give him a release, which is valid if obtained fairly and without undue influence."

While the courts of this state are and should be ever zealous of the rights of minors and should throw every protection and safeguard around such minors, we are not unmindful of the fact that public policy requires the court to uphold the orders of the court and the jurisdiction of the court to make an order for the sale of a ward's estate, and protect the rights of innocent purchasers, where the consideration paid for such land is adequate and no suggestion of fraud or unfair dealing in any manner whatsoever is made by the parties seeking the relief.

"The appointment of a guardian for a minor by a county court imports jurisdiction in the court so to do, and it will be inferred from the fact that such an appointment was made that all the facts necessary to vest the court with jurisdiction to make the appointment had been found to exist before the same was made." Hathaway et al. v. Hoffman et al., 53 Okla. 72, 153 Pac. 184.

"In the instant case, the proceedings of the county court of Haskell county are conceded to be regular upon their face, the petition for the appointment of the guardian alleged that the residence of the minors was in Haskell county. It was necessary for the county court of the county to determine their residence as a matter of fact as a prerequisite to making the appointment of a guardian, and having done so, the determination of the court may not be collaterally attacked upon the ground that the finding upon which jurisdiction was based was untrue. These principles, and that the instant case constitutes a collateral attack upon the judgment of the county court, are firmly established by the decisions of this court in Baker v. Cureton, 49 Okla. 15, 150 Pac. 1090, and Hathaway v. Hoffman, 53 Okla. 72, 153 Pac. 184." Scott v. Abraham, 60 Okla. 10, 159 Pac. 270.

Freeman, in his work on Judicial Sales, states as follows:

"It is a general rule that one who purchases at a judicial, probate, or execution sale cannot be deprived of his title by secret frauds or irregularities in which he did not participate, and of which he had no notice, * * * nor can an innocent purchaser be injuriously affected by proof of any mistake, error or fraud of an administrator or guardian in conducting a sale."

In view of the fact that the record is silent on the question of the ward having any interest in Mayes county at the time of the appointment of the guardian, and there not appearing to be any necessity for the appointment of a guardian in Mayes county, and the laws of Oklahoma in force in 1908, providing that guardians may be discharged by order of the court, and the nunc pro tunc order appearing upon its face to have been regular and made after

due notice, the power of the court to make such nunc pro tunc order being unquestioned under the opinions of this court and in view of the efforts of the guardian to have his appointment as guardian in Mayes county annulled or revoked, and the guardianship discharged, and his testimony showing that he did not know whether such had been done or not, and in view of the further fact that the undisputed testimony of Annie Merry was to the effect that upon the filing of the final account of the guardian, she was present in court and acquiesced therein, and expressed her complete satisfaction with the actions of the guardian and the sale of her land, and that she was at that time married, and had also attained the age of 18 years, and that plaintiff in error, Bowling was a bona fide purchaser for value and no question of fraud or unfair dealing, or undue influence was suggested in this case, and all the proceedings of the probate court of Rogers county being regular upon their face, we are constrained to hold that the district court erred in holding that the county court of Rogers county was without jurisdiction, and in entering judgment for the plaintiff, and this case should be reversed and remanded to the district court of Rogers county for a new trial in conformity with this opinion. Reversed and remanded.

By the Court: It is so ordered.