## PENNINGTON *et al.* v. NEWMAN.

No. 2486.    Opinion Filed January 7, 1913.

(129 Pac. 697.)

1.  **EXECUTORS AND ADMINISTRATORS** — Action on Bond — When Maintainable. Neither an administrator, nor the sureties on his bond, may be sued for a breach of his administrator's bond until there has been a settlement or final accounting in the (probate) county court, and a decree entered therein, showing a balance due, or some other breach of the conditions of the bond, and a failure on the part of the administrator to, comply with the decree entered on the settlement or accounting.

2.  **SAME**—Inventory—Impeachment. The inventory is prima facie evidence of the extent and value of the estate which has come to the administrator's hands, but he may, in proper cases, show that, through inadvertence, ignorance, or mistake, property has been put into it which did not in fact belong there.

3.  **SAME.** As a general rule, an inventory may not be impeached by a collateral attack. The proper method of correcting it is by motion, after notice, in the court where the administration case is pending.

(Syllabus, by Robertson, C.)

*Error from Haskell County Court;*
*A. L. Beckett, Judge.*

Action by Lillie A. Newman against C. O. Pennington and others. Judgment for plaintiff, and defendants bring error. Reversed.

*Holley & Fannin,* for plaintiffs in error.

*J. F. Lawrence,* for defendant in error.

Opinion by ROBERTSON, C. C. O. Pennington is the duly appointed, qualified, and acting administrator of the estate

of W. M. Newman, deceased.  On March 27, 1909, he filed in the county court of Haskell county an inventory and appraisement of the property belonging to the estate, which inventory showed said estate to be of less value than $1,500.  On September 6, 1909, on motion of defendant in error, Lillie A. Newman, widow of deceased, an order was made by the county court, setting aside "for the support of herself and minor children all the personal property of the said estate, after paying the burial expenses of decedent, and the expenses of his last sickness, and the costs of administration of said estate," and directing the administrator to deliver the same to the widow.  No accounting on the part of the administrator, of any kind or character, has been made, nor has any been demanded, nor has the administrator been discharged or removed from office.  So far as the record shows, the order hereinbefore alluded to, setting apart the personal property of said estate to the widow and minor children, is the last order made by the court in the administration of said estate.  On May 23, 1910, the widow in her own name began this action in the county court to recover the value of certain personal property, shown by the inventory to belong to the estate, and which had been by the court ordered delivered to her, but which the administrator, for various reasons, had failed to turn over.  She joined as defendants in said action C. O. Pennington, the administrator, J. E. Pennington, O. H. Jones, and Cad McConnell, the sureties on the administrator's bond. The defendants demurred to the petition, which was overruled by the court, whereupon they answered, and alleged, among other things, first, that the court had no jurisdiction to try and determine the case; second, a general denial; third, that no final, or other, settlement, or accounting of any kind had ever been had as required by law; fourth, a full compliance with all orders of the court; fifth, that the allegations of the inventory were untrue, in that it showed certain personal property in the hands of the administrator, when in truth and in fact said property never had been in the possession of the administrator, and that said entry on said inventory had been made through mistake; sixth, that the property, the value of which the suit was

brought to recover, even though it had belonged to the estate, had prior to the appointment of the administrator been disposed of by the heirs of said deceased, with the knowledge, approval, and consent of the plaintiff. Plaintiff demurred to paragraphs 3, 5, and 6 of defendants' answer, which demurrer was sustained by the court, and thereby left as an answer to the petition, the challenge to the jurisdiction of the court, the general denial, and the plea of full compliance with the orders of the court. Upon the issues thus joined trial was had to a jury,. and at the close of the evidence the court directed a verdict in favor of the plaintiff for the full amount claimed. Motion for new trial was filed and overruled, and defendants prosecute this appeal to reverse the judgment entered upon said verdict.

Plaintiffs in error rely upon three grounds for reversal, the first being the alleged error of the court in overruling their demurrer to plaintiff's petition. Under this assignment, defendants contend that, inasmuch as the action is based upon the breach of an administrator's bond, it must appear affirmatively by the petition that there has been an accounting or final settlement, and the petition, being barren of any such allegation, was therefore fatally defective. This contention is correct.. It seems to be the universal holdings of the courts that neither an administrator, nor his sureties, can be sued on the bond until there has been a settlement, or an accounting, in the probate court, showing a balance due, or some other breach of conditions of the bond, and a failure on the part of the administrator to comply with the decree entered on the settlement or accounting. In 18 Cyc. 1280, it is said:

"Before a creditor, legatee, or distributee can sue on an administration bond to enforce payment of his claim against the estate, the liability of the estate must be established. So a creditor cannot sue on the bond until his claim has been established by a judgment, or has been ascertained and allowed by the probate court, nor can a distributee or residuary legatee sue on the bond until the amount ·for distribution and the persons entitled thereto have been ascertained by the probate court."

In support of the foregoing, see, also, the following: *Grady v. Hughes,* 80 Mich. 184, 44 N. W. 1050; *Tudhope v. Potts,* 91

Mich. 490, 51 N. W. 1110; *Gott v. Culp*, 45 Mich. 265, 7 N. W. 767; *Green v. Creighton*, 64 U. S. (23 How.) 90, 16 L. Ed. 419; *Chaquette v. Ortet*, 60 Cal. 594; *Allen v. Tiffany*, 53 Cal. 16; *Irwin v. Backus*, 25 Cal. 214, 85 Am. Dec. 125; *In re Allgier*, 65 Cal. 228, 3 Pac. 849; *Curtiss v. Curtiss*, 65 Cal. 572, 4 Pac. 578; *Weihe v. Statham*, 67 Cal. 84, 7 Pac. 143; *Beall v. New Mexico*, 16 Wall. 535, 21 L. Ed. 292; *Garvey v. U. S. Fid. & Guar. Co.*, 77 App. Div. 391, 79 N. Y. Supp. 337; *Reed v. Hume*, 25 Utah, 248, 70 Pac. 998; *Hudson v. Barratt*, 62 Kan. 137, 61 Pac. 737; *Eaton v. Benefield*, 2 Blackf. (Ind.) 52; *Bellinger v. Thompson*, 26 Ore. 320, 37 Pac. 714, 40 Pac. 229.

Plaintiff's sole reliance is on the decree authorizing and ordering the administrator to turn over and deliver to the widow all the personal property in his hands as such administrator. To our minds this is not such a decree as is contemplated by statute, or by the authorities cited above. It is altogether too indefinite and uncertain to charge the administrator with a breach of the conditions of his bond. Thus an examination of that decree shows that the administrator "be and he is hereby ordered and directed to deliver over to said Lillie A. Newman, for the support of herself and minor children, all of the personal property of said estate, *after paying the burial expenses of decedent, and the expenses of his last sickness, and the costs of administration of said estate.*" (Italics ours.) There is nothing in the record before us to show whether or not the burial expenses of the deceased had been paid, or whether or not the expenses of his last sickness had been settled, or that any provision whatever had been made for the costs of administration. If there had been no settlement or final account, the item of expenses and costs of administration could not be ascertained, and, until the same were determined, the administrator could not say how much of the money in his possession, if any at all, would be left for distribution under this decree. The expenses enumerated in the order of the court hereinabove according to the terms of our statute must be paid out of the estate, and this order distributing the estate to the widow and minor children was necessarily made subject to that provision of the statute.

The next assignment relied upon is that the court erred in sustaining plaintiff's demurrer to paragraphs 3, 5, and 6 of defendants' answer. The third count of the answer alleged that no final or other settlement or accounting had ever been made as required by law, the fifth that the allegations of the inventory were untrue, in that it showed certain personal property in the hands of the administrator, when, in truth and in fact, said property had never been in the possession of the administrator, but that said entry, on said inventory, had been made by mistake, and, sixth, that the personal property, the value of which the suit was brought to recover, even though it had belonged to the estate, had, prior to the appointment of the administrator, been disposed of by the heirs of said estate, with the knowledge, approval, and consent of the plaintiff. The first question raised by this assignment has been hereinabove disposed of, and no further consideration will be given it here.

As to the first count, it is clear to our minds that the inventory and appraisement filed by the administrator is only *prima facie* evidence that the administrator had received the property named therein. This being true, its recitations may be rebutted in proper cases. The following seems to be the rule:

"Neither the inventory, nor the appraisement, however, is conclusive upon any person, and, in actions by and against an executor or administrator, it is competent to show that property belonging to the estate was improperly or inadvertently omitted therefrom, or that the property therein contained was overvalued or undervalued, or was not the property of the deceased." (5 Ency. Evidence, 445, and cases cited.)

In *Stewart's Estate,* 137 Pa. 175, 20 Atl. 554, it is said:

"The inventory is *prima facie* evidence of the extent and value of the estate which has come to the administrator's hands, but he may still show that through inadvertence, ignorance, or mistake property has been put into it which did not in fact belong there."

As a general rule, an inventory may not be impeached by a collateral attack. The proper method of correcting it is by motion, after notice, in the court where the administration case is

pending. Hence we cannot say there was error in the ruling of the court on that point.

As to the sixth paragraph of the answer, we are of opinion that the court also erred in sustaining the demurrer. The record clearly shows that prior to the appointment of an administrator, Joe Newman and W. F. Newman, adult sons of the deceased by a former wife, and Mrs. Lillie A. Newman, widow and the plaintiff in the case below, made and entered into an agreement, whereby they consented that all personal and perishable property of the deceased should be disposed of by immediate invoice and sold, and that the proceeds of the sale go to the deceased's two children, namely, Joe Newman and Lonnie Newman. This was such an agreement as the parties under the law and the facts of this case had a right to make. There is no contention but that the same was honestly and voluntarily made and entered into. The widow makes no charge of fraud, duress, or undue influence or mistake of fact or law. If she can show that the contract between herself and Joe and F. W. Newman was procured by fraud and that the administrator was a party thereto, or through any negligence on his part, the property therein enumerated was lost to the estate, she might be heard to complain. The administrator offered by his answer to show that the entry on the inventory showing possession of the property was made by mistake; that it should have been made as an entry showing "claims due the estate"; that the widow well knew what became of the property; that she had voluntarily given it to the children of deceased by a former wife. There is no excuse or reason offered why this agreement should not stand, and it seems to us that before the widow will be permitted to sue the administrator on his bond for the recovery of the value of the property which she well knew he had never received (but which on the contrary she had disposed of herself) would be little short of a travesty on justice, and she ought not to be permitted to maintain such an action, as it would, in effect, be a fraud perpetrated upon the administrator under the guise of law. These conclusions render it unnecessary to notice the other assignments of error urged by plaintiffs in error in this case.

The decree made by the county court was not conclusive against the principal or the sureties on his bond, for the reason that it was conditional, indefinite, vague, and uncertain, in that it did not describe the property to be turned over, or the amount to be turned over, but left the administrator to turn over such amount as he might have in his hands, after paying the burial expenses, the expense of decedent's last sickness, and the cost of the administration. As has been said hereinbefore, it was impossible, under that order, for the administrator to comply therewith until there had been a settlement or final accounting in the probate court, and without which the suit, to say the least, was prematurely brought.

For the reasons hereinbefore enumerated, the judgment of the county court of Haskell county should be reversed.

By the Court: It is so ordered.