**PETROLEUM AUDITORS ASS'N et al. v. LANDIS.**

No. 27789.   March 22, 1938.

Thomas P. Holt. for plaintiff in error Petroleum Auditors Association.

Hatcher & Hatcher, for plaintiff in error Gilbreath.

Sigler & Jackson, for defendant in error.

PHELPS, J. This was an action by the guardian of an adult incompetent person, to quiet the ward's title to certain land owned by him, as against the claims of the defendants that they owned certain mineral rights therein, said mineral rights having been conveyed to them by the alleged grantee of the incompetent. Judgment was entered for plaintiff, and the defendants appeal.

The evidence amply sustains the trial judge's finding that the ward, who is a man 39 years of age, had from birth been incapable of contracting and at the time of the execution of the alleged deeds was entirely without understanding.

There were two deeds involved. We shall first discuss the deed whereunder defendant Petroleum Auditors Association claims. The ward's stepfather, who was not his guardian but who unofficially looked after his affairs, was desirous of removing a mortgage from the ward's land. He, the stepfather, signed the ward's name to a deed conveying three-fourths of the mineral rights to a man by the name of Charles O. Cannady. At that time the ward had no guardian. It is not shown that the ward knew of the fact that his stepfather had signed the ward's name to the deed. The stepfather delivered said deed to the grantee, Cannady, with the understanding that Cannady would use it for raising enough money to liquidate the mortgage. Cannady failed to do this, however, and, instead, conveyed by mineral deed to the defendant Petroleum Auditors Association. Those deeds were recorded. Thus the following facts are shown by undisputed evidence: That the purported deed to Cannady was in effect a forgery; that the ward, even had he signed the deed, was in fact wholly incapable of contracting; that the ward's stepfather, who signed the ward's name to the deed, was not authorized so to do, and was not guardian; that at that time the ward had no guardian.

The other deed which it is asserted was made by the incompetent ward, forming the basis of defendant Gilbreath's claim, was not introduced in evidence. Neither was it recorded. A witness testified that such deed had existed but had been lost. However, little discussion of that deed is needed, for its execution by either the ward or by his stepfather was denied by another witness (the stepfather) who would have

known had such deed been executed. This made merely a conflict in the evidence. The rule in that connection, in so far as relative credibility of witnesses is concerned, and as applied either to equity or law actions, is so well known that it needs no discussion here.

It is pointed out by the defendants that when the purported deeds forming the basis of their title were executed the ward had no guardian, and had been restored to competency some years before that. Assuming, without comment, that this fact would preclude the present guardian from asserting lack of mental capacity in the ward on the occasion of the execution of the deed or deeds, still the fact would remain that, regardless of whether the man was competent or incompetent, the evidence nevertheless reveals that he never signed the deeds, and there is little or no evidence to the effect that he even knew thereof.

The only contention which seems to be seriously urged by the defendants is that the guardian, plaintiff in the present action, lacked legal capacity to sue. They point out that the present guardian (plaintiff) was appointed shortly before the bringing of this suit, and that the order appointing the plaintiff guardian does not affirmatively show that the incompetent person was present in court at the hearing which resulted in the appointment. They say that by reason of section 1445, C. S. 1931, the failure of the order or decree affirmatively to show his presence, or the reason for his absence, renders the appointment of the guardian void; that therefore the plaintiff is without legal capacity to sue.

The order of the county court appointing the plaintiff as guardian of the incompetent person does not recite either the presence of said person, his absence, or, if absent, that he could not have attended. In other words, the record is simply silent on the question. Section 1445, O. S. 1931, provides among other requirements that the person whose competency is being inquired into must be produced before the county judge at the hearing, if able to attend.

Under the above circumstances, there being no extrinsic fraud involved, and the record being silent on the question whether the ward was present at the hearing, the presumption is that he was present, or that it was shown that he was unable to attend. County courts in this state are courts of record and have general jurisdic-

tion in probate matters. In re Leaf's Deed, 180 Okla. 414, 70 P.2d 75. The orders and judgments of such courts, when acting within their jurisdiction, are entitled to the same favorable presumption and the same immunity from collateral attack as are accorded other courts of general jurisdiction. Welch v. Focht, 67 Okla. 275, 171 P. 730, L. R. A. 1918D, 1163; Bowling v. Merry, 91 Okla. 176, 217 P. 404; Gallaghar v. Petree, 103 Okla. 295, 230 P. 477; Baird v. Patterson, 172 Okla. 158, 44 P.2d 90. As stated in Welch v. Focht, supra:

"There is also practical unanimity among the authorities that a judgment of a court of general jurisdiction cannot be collaterally attacked, unless the record affirmatively shows want of jurisdiction, and every fact not negatived by the record is presumed in support of the judgment of a court of general jurisdiction, and where the record of the court is silent upon the subject, it must be presumed in support of the proceedings that the court inquired into and found the existence of facts authorizing it to render the judgment which it did."

That the ward was present at the hearing (or, if absent, that it was found he was unable to attend) is not negatived by the record in the guardianship proceedings which are now under attack. Therefore the presumption, according to the foregoing authorities, is that he was present or that it was found he was unable to attend. That presumption is not subject to attack in the present collateral proceeding, according to the same authorities. However, and to prevent confusion, under the rule laid down in Johnson v. Petty, 118 Okla. 178, 246 P. 848, 3d syllabus, it could have been attacked if by means of fraud or perjury **as to jurisdictional facts** the court in the guardianship proceedings had been imposed upon and thereby induced to assume jurisdiction, whereas in reality the court could not have acquired jurisdiction if the truth had been made known as to such jurisdictional facts. The latter is known as fraud extrinsic to the record, and is an exception to the general rule. Johnson v. Petty, supra. No such allegation or proof was offered.

However, even if the presumption were open to attack in a collateral proceeding failing to allege extrinsic fraud, it was not attacked by evidence in the present case. There is no testimony in the record on the question at all, either that the ward was present at the guardianship hearing, or that he was absent. Thus the defendants, in so far as this appeal is concerned, are left with no argument other than that the order under attack failed affirmatively to state the presence of the ward or his inability to attend. They cite no authority requiring such affirmative recitation, and it is apparent that such contention is contrary to the rule announced in Welch v. Focht and other decisions, supra, to the effect that every fact not negatived by the record is presumed in support of the judgment in courts of general jurisdiction.

It is further contended by the defendant association that it should be permitted to pay plaintiff the amount of money which Cannady had promised to raise, for the purpose of liquidating the mortgage formerly constituting a lien on the premises, as recited above, and that upon such payment the deed to it should be upheld. We cannot grant defendant relief upon that ground. The incompetent ward did not sign the deed to Cannady, and probably knew nothing of it, and also lacked the mental ability to understand the nature thereof even if he had signed it. He is not bound by the representations of his stepfather, who was not his legal guardian. And he made no representations himself. The court would be no more justified in holding him to such an agreement than it would be justified in holding him to the terms of the deed itself.

There is no doubt that the defendant acted throughout in the utmost good faith, but it simply bought from a person who had no title. We perceive no legal or equitable theory, under the facts of the case, permitting relief as against the owner of the land.

The judgment is affirmed.

BAYLESS, V. C. J., and CORN, GIBSON, and HURST, JJ., concur.