WILSON v. DUNCAN et al.

No. 28095.   Jan. 28, 1941.

Rehearing Denied Feb. 18, 1941.

Application for Leave to File Second Petition for Rehearing Denied March 4, 1941.

*110 P. 2d 596.*

DAVISON, J. Plaintiff in error, a full-blood member of the Osage Tribe of Indians, commenced this action as plaintiff on September 28, 1936, against her former guardian and the surety on said guardian's bond, appearing herein as defendants in error.

In her petition she complained of allegedly unlawful disbursements by Duncan, said guardian, of more than $11,000 of her allegedly restricted funds without the authorization or approval of any of the proper officials of the Osage Agency or the Department of the Interior, but mentioned that said Duncan had "filed in the county court what purported to be a final account . . . ."

In compliance with the orders of the trial court sustaining motions and demurrers on behalf of the defendants, plaintiff attached to her second amended petition a copy of the journal entry of the judgment entered by the county court of Osage county on the 12th day of February, 1932, approving the final report of the guardian, Duncan, and ordering the distribution of the remainder of plaintiff's estate in her possession; as well as the exoneration of herself and her surety upon completion of said distribution. In said pleading plaintiff attacked said judgment, however, and prayed for its vacation on the following grounds: That she had had no notice of the hearing at which it was entered, nor of its rendition until "shortly prior to the time of filing this action"; that it purports to approve expenditures which had not been approved by any of the officials of the Department of the Interior; that it purports to discharge the defendants from liability on a bond given after the majority of the ward and over which the county court had no jurisdiction; and that by reason of the fact that the county court was not advised that the expenditures lacked the approval above mentioned, and the further fact that plaintiff was without notice of the hearing and an opportunity to be present thereat, said decree of the county court was fraudulently obtained. In her "Supplement and

Charles R. Gray and W. N. Palmer, both of Pawhuska, for plaintiff in error.

Hamilton & Kane, of Pawhuska, for defendant in error L. M. Duncan.

Humphrey & Spence, of Pawhuska, for defendant in error United States Fidelity & Guaranty Company.

Amendment to the Second Amended Petition" plaintiff reiterated most of the material allegations of her second amended petition, inserting additional details in connection therewith, and inferentially admitting that public notice of a hearing to be had on her guardian's final account had been issued, but she alleged that said notice designated the date of the hearing as February 11, 1932, when in truth and in fact said hearing was not held until the following day, February 12th. She further conceded that the decree entered on the 12th of February contained a finding that said hearing was continued from February 11th, but she denied the truth of said recitation. Additional allegations charging that fraud was perpetrated upon the court are also contained in the amendment.

The trial court sustained demurrers by both defendants asserting both general and special grounds therefor, including the statutes of limitation, as barring the cause of action plaintiff was attempting to allege in the pleading last above described; and upon plaintiff's refusal to plead further, judgment dismissing the action was entered. From said order and judgment, plaintiff has perfected the present appeal.

The foundation of plaintiff's contention that the county court's decree of February 12, 1932, purported to give judicial approval to disbursements which she alleges were made in violation of federal statute is her claim that the disbursed funds were a part of, or derived from, that portion of her estate which she claims was restricted under the various acts passed by Congress with reference to income from property owned by individuals by reason of their membership in the Osage Tribe of Indians. On the basis of this charge and the further representations that none of the more than $11,000 of disbursements made by the guardian, Duncan, allegedly out of the restricted portion of her income, were ever approved by any of the other agencies authorized by the Act of Congress of February 27,

1925 (43 St. L. 1008) to give such approval, she asserts that the county court of Osage county was without jurisdiction to approve of same, and that therefore its final decree of February 12, 1932, was void.

Assuming without deciding that, as plaintiff asserts, the particular portion of the guardian's expenditures herein questioned were of such a character or were derived from such a source as to be affected by the federal statute (Act of Congress of February 27, 1925, supra) rather than being a portion not affected (see Williams v. Clinton et al., 83 Fed. 143, 145), and that under a proper interpretation of said act this fact withheld jurisdiction from the county court to judicially approve of the guardian's expenditure of a part of them under any circumstances, and his expenditure· of another part without the approval of the Superintendent of the Osage Agency or the Secretary of the Interior, what is there to support her representations or to challenge the presumptions of correctness and validity which accompany the court decree? She does not allege that this solemn decree of the county court of Osage county is void on its face or that any of the alleged facts she relies upon for its lack of jurisdiction are revealed by its judgment roll. It is true that the journal entry as reproduced in her pleadings does not state specifically whether or not the funds were of such character as could be rightfully expended by the guardian, either with or without the approval of the Superintendent of the Osage Indian Agency or the Secretary of the Interior, although it does contain the specific finding that copies of the documents designated by the Act of February 27, 1925, to be served upon the Superintendent of the Agency were so served. In the absence of any showing to the contrary in the judgment or judgment roll of a domestic court of general jurisdiction, it is always presumed that said court possessed the jurisdiction to render such judgment until such presumption is overcome by

cogent and convincing evidence. And this presumption exists with reference to such judgments, as distinguished from judgments of courts of limited jurisdiction, even in the absence of a specific finding in those judgments of the facts necessary to give such courts jurisdiction to render them. See Petroleum Auditors Ass'n v. Landis, 182 Okla. 297, 77 P. 2d 730; Yahola Oil Co. v. Causey, 181 Okla. 129, 72 P. 2d 817; Protest of St. Louis-San Francisco Ry. Co., 171 Okla. 180, 42 P. 2d 537; Protest of Stanolind Pipe Line Co., 168 Okla. 281, 32 P. 2d 869; Orth v. Hajek, 127 Okla. 59, 259 P. 854; Bowling v. Merry, 91 Okla. 176, 217 P. 404; Dill v. Anderson, 124 Okla. 299, 256 P. 31; Cummings v. Inman, 119 Okla. 9, 247 P. 379. The same principle applies to judgments of this state's county courts in probate matters of Osage Indians. Article 7, sec. 13, Oklahoma Constitution; sec. 3, Act of Congress of April 18, 1912, 37 St. L. 86; and see discussion in Globe Indemnity Co. v. Bruce, 81 F. 2d 143.

As far as the allegations of plaintiff's petition are concerned, the record of the proceedings in the county court may reveal that the proper officers approved the guardian's expenditures before the court's decree was entered. However this may be, we may now assume that they did. In Hetherington v. Falk, 173 Okla. 437, 49 P. 2d 756, the following applicable rule was quoted from Kehler v. Smith, 112 Okla. 183, 240 P. 708, 711:

". . . When a court of competent jurisdiction has rendered a judgment in relation to any subject matter within its jurisdiction, the presumption arises that it had before it sufficient evidence to authorize it to award such judgment, and where facts were required to be proved to confer jurisdiction, that such facts were duly proved, although the record is silent upon the matter."

See, also, the expression of the rule quoted in Calkin v. Wolcott, 182 Okla. 278, 77 P. 2d 96, from Johnson v. Furchtbar, 96 Okla. 114, 220 P. 612.

The defendants say that plaintiff does not now, in her district court action, effectively challenge these presumptions in support of the county court's judgment of February 12, 1932, for two principal reasons. One is that she has waited too long to attempt it.

As already noted, one of the allegations incorporated in the defendants' demurrers is that plaintiff's action is barred by limitations, and using October 8, 1909, the date specified in plaintiff's pleadings as the date of her birth, to compute the date that she reached majority, their counsel argue quite convincingly that any cause of action she might have was barred by both the two- and three-year statutes of limitation. According to plaintiff's theory, however, she is barred by neither of these limitations, both for the reason that her cause of action is founded upon fraud, and because the judgment whose nullification she seeks is void. Plaintiff's position with reference to the two-year statute "for relief on the ground of fraud . . . ." (subdivision 3, sec. 101, O. S. 1931, 12 Okla. St. Ann. § 95, subd. 3) is based upon the hypothesis that she did not discover the fraud, and therefore her cause of action did not accrue until shortly before she filed the present case. The only allegations of fraud which plaintiff's pleadings purport to bring within the statutory proviso which she seeks to invoke against the demurrers are, not those concerning the alleged fraud upon the county court hearing the proceedings, but those concerning what she seems to regard as fraud upon her. She therein alleges that she did not know, and her guardian or the latter's attorney did not advise her, of the filing of the guardian's report, of the hearing contemplated thereon; or that she was entitled or permitted to appear at said hearing until shortly prior to her filing of this action. Such allegations are insufficient to challenge the validity of the Osage county court's decree approving the guardian's final report, either on the ground that it was procured by fraud or that said court was without jurisdiction to render it. Fundamentally, her charge with reference to having

been given no actual personal notice of the proceedings in advance of them depends, of course, upon whether or not she was entitled by law to such notice. Our attention has been called to no statute, either local or federal, and we know of none, which requires personal or direct notice to a ward of a hearing upon his or her guardian's report. The only notice specifically required by statute for the final settlement and distribution of a ward's estate is that which is required for the same character of hearing involving the estates of decedents. Section 1474, O. S. 1931, 58 Okla. St. Ann. § 833, and see sec. 1345, O. S. 1931, 58 Okla. St. Ann. § 553; Gassin v. McJunkin, 173 Okla. 210, 48 P. 2d 320. That the cited statutes (as well as sec. 3 of the Act of Congress of April 18, 1912, supra, providing for service upon the Superintendent of the Osage Agency) were complied with, is not herein questioned. Such notice is "notice to the world, and brings before the court all parties having or claiming an interest in the estate, and . . . . a decree rendered on such notice, unappealed from, is binding and conclusive against all parties claiming an interest in such estate, subject, however, to be impeached for fraud and set aside in a proper tribunal to the same extent, and in like manner as other judgments." National Exploration Co. et al. v. Robins, 140 Okla. 260, 283 P. 236, 248, quoted with approval in Hetherington v. Faulk, supra, and cited with approval in Gassin v. McJunkin, supra.

As to the fraud which, according to the representations of plaintiff's pleadings, is supposed to have been perpetrated upon the county court, there is a great deal of argument in the briefs concerning its character, i.e., whether it was "intrinsic" or "extrinsic" fraud. Counsel for the defendants give us a rather convincing demonstration that the type of fraud described in the pleadings is intrinsic and concerns matters which were in issue in the county court proceedings rather than extrinsic and collateral to the issues there tried. We deem it unnecessary to set forth a lengthy academic discussion of this question about which so much has been published, for the reason that it is not reached, or placed in issue, by the pleadings of this case. We have hereinbefore noted that in her pleadings plaintiff sought to escape the bar of the two-year limitation period by pleading that she was unaware of the filing of her guardian's final report and the hearing at which it was judicially approved, until "shortly prior" to filing this action. If her ignorance of the proceedings proper is relied upon as obviating the necessity of also alleging that she had no knowledge of any of the allegedly fraudulent transactions until shortly before filing this action, plaintiff's efforts are a total failure in view of the law concerning such matters. A plea that she did not discover any of the alleged fraud until just before filing the action could not stand upon the allegation that she had no notice of the proceedings until then. The record of them is notice to the world, and she reveals in her pleadings that they had been of record since early in the year 1932. As to the effect upon a charge of fraud, of notice imparted by public records, see Board of Commissioners of Garfield County v. Renshaw, 23 Okla. 56, 99 P. 638, 22 L. R. A. (N.S.) 207; Stauffer v. Watts, 73 Okla. 68, 174 P. 1031; Finley v. Riley, 91 Okla. 58, 215 P. 950.

Nor is plaintiff correct in assuming that she is entitled to a trial of her alleged cause of action upon the hypothesis that the previous judgment of the county court, even though not void upon its face, may always be attacked by means of the instrument she seeks to use in a court possessing equitable powers after other means of attack prescribed by statute for vacating or setting aside such judgments are no longer available. The power of a court of equity to grant relief is not obtained merely by the asking. Its remedies are granted only upon a proper application or request therefor. It offers no assistance to those who fail to use diligence in exercising their own rights or to those who have had legal rights but have

"slept" on them, or given no attention or industry to preserving them—those who have had adequate legal remedies, but have neglected to apply for them. A necessary prerequisite to cognizance of an alleged cause of action by a court exercising equitable powers is a showing that by reason of special circumstances there has been no opportunity for an adequate hearing at law. See Pettis v. Johnston, 78 Okla. 277, 190 P. 681, and notice Abels v. Frey (Cal. App.) 14 P. 2d 594. This principle permeates the whole body of equity practice and procedure.

As early as Racey v. Racey et al., 12 Okla. 650, 73 P. 305, this court held:

"The powers of a court of equity cannot be invoked where it is clear from the facts pleaded in the petition that the plaintiff had a plain and adequate remedy at law, and by his own laches or neglect failed to avail himself thereof, and no valid cause or excuse is shown for such failure or neglect."

This rule has been followed and reaffirmed in this jurisdiction in the following cases, among others: Pettis v. Johnston, supra; Worley v. Mundell, 123 Okla. 237, 253 P. 42; Amos v. Johnston, 162 Okla. 115, 19 P. 2d 344; Reeder v. Mitchell, 167 Okla. 621, 32 P. 2d 26; Flynn v. Vanderslice, 172 Okla. 320, 44 P. 2d 967.

In the present case the plaintiff's pleadings fail to state facts sufficient to invoke the jurisdiction of the district court in the exercise of its equitable powers. They fail to show that the regular legal proceedings by which the county court is empowered to vacate its own judgments (see sections 556 and 564, O. S. 1931, 12 Okla. St. Ann. §§ 1031 and 984) were in any wise or for any reason unavailable to her. By pleading her birth date she reveals that she became sui juris in plenty of time to have instituted regular vacation proceedings against the judgment she, at this late date, seeks to overthrow. The filing date endorsed on the journal entry of the county court's "Judgment Approving Final Report and Ordering Distribution," a copy of which, as hereinbefore noted, is attached to her second amended petition, reveals that she has had constructive notice thereof since March 15, 1932. This was sufficient to put her on inquiry as to all of the irregularities she now complains of. As said in the general rule cited by the Supreme Court of the United States in Norris v. Haggin, 136 U. S. 386, 34 L. Ed. 424, and quoted with approval in Board of Commissioners of Garfield County v. Renshaw, supra:

". . . Where the transaction is a matter of public record, . . . so that the party complaining has abundant means of finding out the fact of the transaction and its nature, there can be no concealment, and he will be charged with notice of the transaction *and of facts which a diligent investigation thereof would develop. A party must be presumed to know what, by the exercise of reasonable diligence, he might have discovered;* and, when the fundamental facts upon which the alleged fraud rests are matters of public record, open to inspection, he will not be permitted to plead ignorance of the fraud. . . ." (Emphasis ours.)

In Finley v. Riley, 91 Okla. 58, 215 P. 950, this court said:

"Where the matters and things complained of in a petition to vacate a judgment for fraud are of record, they impart such notice as to put an interested party on inquiry as to extraneous matters suggested by them. . . ."

The fourth and last proposition argued in plaintiff's briefs is: "The bond sued on was given after the ward attained her majority and the county court had no jurisdiction to adjudicate concerning it." In support of this contention it is pointed out that according to the allegation of the plaintiff's pleadings, she was born on October 8, 1909, so that obviously she had reached majority before December 22, 1931, when the bond involved herein was executed, as well as February 12, 1932, the date that the county court of Osage county rendered its judgment approving the guardian's final report. As authority

for the proposition that after she became of age, the county court was without jurisdiction to approve or settle her guardian's account, plaintiff relies principally upon expressions found in 28 C. J. at page 1214, and the early case of In re Algier, 65 Cal. 228, 3 P. 849, wherein the Supreme Court of California reversed the judgment of one of the superior courts of that state allowing and settling a guardian's account presented by his executors, *the guardian having died before final settlement.* This court is in accord with the result reached in the California case (Title Guaranty & Surety Co. of Scranton, Pa., v. Burton, 67 Okla. 320, 170 P. 1170), but such holdings are obviously not applicable to the present situation. See Southern Surety Co. v. Hatch, 81 Okla. 36, 37, 196 P. 542, 543. While it is true that the defendant's demurrers admitted the correctness of plaintiff's allegation as to her date of birth, and by inference, of course, admitted that on the respective dates the bond was given and the judgment of the county court was entered, said ward had become an adult, yet it also asserts in effect that though this may be true, the pleadings filed by the plaintiff do not state a cause of action. In its fundamental aspects we have already upheld this plea, and we see in plaintiff's last contention no cause for modifying or departing from that decision. We have hereinbefore found plaintiff's pleadings lacking as an allegation of an equitable cause of action. Therefore, assuming that the guardian's bond was given and that the decree was entered after she reached majority, and granting that said decree was for this reason void, the basic question still remains: Do the plaintiff's pleadings invoke the equitable powers of the district court to set it aside? We have noted that she does not therein allege that the judgment is void upon its face, and in connection with her last proposition, it should now also be observed that she does not allege that either the judgment or the judgment roll of the Osage county court reveals that, at the time the bond was executed and the judgment entered, she had attained majority. As pointed out in Pettis v. Johnston, supra, even a void judgment, as long as it is not void on its face, or has not been nullified by a proper proceeding to vacate it, stands as a valid judicial pronouncement. Doubtless there are many of such judgments of record in this and other jurisdictions which now comprise the basis of liability or exoneration therefrom, as well as of titles to vary valuable tangible property. If these were subject to dissolution at any time merely upon evidence dehors the record or extrinsic proof of their defects without preliminary judicial consideration for the length of the delay in the attack, or the reasons therefor, there would be little certainty, stability, or value in the solemn pronouncements of our courts of record. As insisted by the defendants, as long as the judgment of the county court of Osage county stands, both the guardian and her surety possess freedom from liability by reason of the guardian's expenditures therein approved or allowed. The only opinions cited by plaintiff in support of allowing her to maintain this action in the district court against both her former guardian and the latter's surety, contrary to the general practice upheld by our previous decisions (see Drum v. Citizens Trust Co. et al., 184 Okla. 228, 86 P. 2d 308; Franks v. Franks, 155 Okla. 91, 7 P. 2d 866; Pennington v. Newman, 36 Okla. 594, 129 P. 693) of requiring a decree of the county court surcharging the guardian with the unlawful disbursements before entertaining an action for breach of his bond, were promulgated in cases where, for some sufficient reason, not the result of fault or neglect on the part of the ward, such preliminary proceedings would have been impractical or impossible. We believe it manifest that the plaintiff's pleadings in the present action have failed to make such a showing. Consequently, we must affirm the action of the trial court in declining to exercise its equitable powers to afford her the relief sought. Its judgment sus-

taining the defendants' demurrers and dismissing the action upon plaintiff's refusal to amend her pleadings is hereby affirmed.

WELCH, C. J., CORN, V. C. J., and RILEY, BAYLESS, GIBSON, HURST, and ARNOLD, JJ., concur. OSBORN, J., absent.