ENRIQUE GUADALUPE GUADALUPE ET AL., Plaintiffs and Appellees, *v.* JOAQUÍN L. RODRÍGUEZ ET UX., Defendants and Appellants. THE SAME, Plaintiffs and Appellants, *v.* THE SAME, Defendants and Appellees.

Nos. 9958 and 9778. Argued November 7, 1949.—Decided March 9, 1950.

916

*R. Arjona Siaca* and *A. Figueroa Rivera* for plaintiffs, appellees-appellants. *Rafael A. Arroyo Ríos* for defendant, appellants-appellees.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

In 1929 Joaquín L. Rodríguez, defendant herein, brought an action in the District Court of Humacao against Alejandrina Guadalupe Ortiz and her minor children, plaintiffs herein, to recover the sum of $2,548.15. The defendants failed to appear in that case and the clerk entered their default and rendered judgment for the amount claimed. Thereafter the property described in the complaint was sold at public auction and adjudicated to the then plaintiff Joaquín L. Rodríguez on April 21, 1930 for $500 as partial payment of the judgment.

More than ten years after the rendition of the judgment by default, on November 27, 1940, the plaintiffs herein, as heirs of Román Guadalupe López [1] and of Alejandrina Guadalupe Ortiz, filed an action against Joaquín L. Rodríguez and his wife attacking the validity of said judgment and seeking the revendication of the aforesaid property, plus the fruits yielded. The complaint was amended on May 24, 1941. They set up two causes of action. In the first one they stated that their father was the owner of the property; that they are the sole and universal heirs of Román Guadalupe López, of Alejandrina Guadalupe Ortiz and of a brother of the plaintiffs who died without offspring prior to the filing

---

[1] Román Guadalupe López died on May 22, 1928.

of the complaint; that their parents never conveyed the property, nor has their deceased brother disposed of his share in the inheritance from his father; and that the plaintiffs have never disposed of the property which was in the possession of the defendants without title and against the will of the former from the time it was adjudicated to them on April 21, 1930. In the second cause of action they claimed the amount of $9,000 for fruits yielded or that should have been yielded and ended by praying for a judgment in their favor and ordering the defendants to restore to them the aforesaid property and to pay them for fruits yielded the amount of $9,000 plus costs, and $1,000 for attorney's fees.

The defendants answered the amended complaint [2] denying the essential allegations thereof and as new matter of defense they alleged that the property was adjudicated to them in an action brought in 1929; that several months before the filing of the amended answer, the Government of the United States of America had condemned the above-mentioned property depriving them of its possession ever since. They alleged as counterclaim: (a) That when the property was adjudicated to them the heirs of Román Guadalupe López owed to the corporation Benítez Sugar Company the sum of $637.44 which was paid by the cross-complainants without it having ever been reimbursed by the heirs of Román Guadalupe López to them; (b) that the cross-complainants had paid to the Treasurer of Puerto Rico the sum of $296 for taxes on the property in question, which amount has not been paid by the cross-defendants either; (c) that the cross-complainants invested in the property the sum of $218 in fences and other improvements. They prayed for the dismissal of the complaint in all its parts, that the counterclaim be granted and that the cross-defendants be ordered to pay them those sums which added to $2,048.15 which was owed to them by virtue of the default judgment—after deducting the $500 of

---

[2] The answer to the amended complaint was filed on February 2, 1944.

the adjudication of the property—amounted to $3,199.59; and that in the event that the court should grant the complaint and order the defendants to pay any money to the plaintiffs, that said amount be offset with that which plaintiffs owe the defendants, as indicated above, and that plaintiffs be then ordered to pay to the defendants the difference between those credits.

The case went to trial and after plaintiffs introduced their evidence, the court dismissed the complaint on a motion for nonsuit, on the ground that the action of revendication did not lie because the defendants were not in the possession of the property. An appeal was taken from that judgment which was reversed by this Court pursuant to § 284 of the Code of Civil Procedure [3] remanding the case to the lower court for further proceedings. *Guadalupe v. Rodríguez*, 66 P.R.R. 138. The trial was continued in the lower court and on August 29, 1947 the judgment appealed from was rendered setting aside the judgment by default entered on January 7, 1930, in case No. 14,749 and consequently held that the property belonged to the plaintiffs; it ordered the defendants to pay to the plaintiffs $425.28 [it should be $425.29] which is the difference between the amount received by the defendants in the condemnation proceedings plus the fruits yielded, which amounted to $3,269.44 [4] and $2,844.15 which the plaintiffs owed the defendants, according to the court, plus costs and $250 for attorney's fees.

Both parties appealed. We shall decide first whether the judgment rendered in case No. 14,749 is void. The lower

---

[3] Section 284 of the Code of Civil Procedure provides:

"In an action for the recovery of real property where the plaintiff shows a right to recover at the time the action was commenced, but it appears that his right has terminated during the pendency of the action, the verdict and judgment must be according to the facts, and the plaintiff may recover damages for withholding the property."

[4] The amount received in the condemnation proceeding was $1,562.39 after deducting taxes owed. The sum of $1,707.05 which completes the amount of $3,269.44 consists of the value of the fruits yielded and of a small house which was destroyed by the defendants worth $20.00.

court set it aside on two grounds: (*a*) Because defendants in Civil Case No. 14,749 were not duly summoned as required by law; and (*b*) because the clerk was not authorized under § 194 of the Code of Civil Procedure to enter default judgment in a case that did not involve an account stated.

## I.

■ The lower court held that the summons was void because the person who served it did not certify that he had delivered a copy of the complaint to each one of the defendants. The return, insofar as material, reads: ". . . delivering to said defendants and leaving in their possession personally at their home in the ward of Palma, Vieques, a copy of this summons and in possession of the defendant a copy of the complaint mentioned in said summons . . .".

It is not contested that the defendants lived together in Vieques within the judicial district of Humacao where suit No. 14,749 was prosecuted. This being so, § 92 of the Code of Civil Procedure, 1933 edition,[4a] is in point. Insofar as pertinent it reads thus:

". . . A copy of the complaint must be served with the summons, unless two or more defendants are residents of the same district, *in which case a copy of the complaint need only be served upon one of such defendants.*" (Italics ours.)

It may be argued that some or perhaps all of the children of Alejandrina Guadalupe Ortiz were minors under fourteen years of age[5] and that pursuant to subdivision 3 of § 93 of the Code of Civil Procedure[6] it was necessary to deliver a

---

[4a] The Rules of Civil Procedure are not applicable because suit No. 14,749 terminated in 1930.

[5] Of the seven minors one was posthumous.

[6] Sudbdivision 3 of § 93 of the Code of Civil Procedure provides:

"The summons must be served by delivering a copy thereof, as follows:

". . . . . . . .

"If against a minor under the age of fourteen years, residing within said Island to such minor, personally, and also to his father, mother or guardian; and if there be none within this Island, then to any persons having the care or control of such minor, or with whom he resides, or in whose service he is employed."

copy of the summons to each minor personally as well as to the mother with *patria potestas*. But since the latter has been sued in the same action and was summoned at the same time as the minors, it was not necessary to serve her with a copy of the summons that had been delivered to each minor, for she held her copy as defendant and was thereby aware of the action instituted against her and her minor children. *Brown* v. *Lawson*, 51 Cal. 615 (1877) and *Pacific Coast Joint Stock Land Bank* v. *Clausen*, 65 P. (2d) 352 (Cal. 1937).

The lower court therefore erred in declaring the summons void. We shall now turn to the validity of the judgment by default.

### II

■■ The amount claimed in suit No. 14,749 consisted of two items: One for $1,498.48 for goods and groceries furnished to Román Guadalupe López; and another for $1,049.67 for similar articles furnished to Alejandrina Guadalupe Ortiz and her children subsequent to her husband's death. The first item was accepted as correct by the mother of the minors in a deed executed on July 16, 1929 by her and her children and the guardian *ad litem* of the latter before Notary Pedro Pérez Pimentel on inventory and appraisal of the property left by the deceased. There is no doubt that this item was an account stated (*líquida y exigible*) by virtue of the acceptance contained in said deed and that the mother could have legally made said acceptance in behalf of her children without judicial authorization. *Fonseca* v. *Molina, et al.*, 39 P.R.R. 525.

It is true that in the instant case the debt accepted by the mother of the minors was contracted by the father, Román Guadalupe López, while in the *Fonseca* case, *supra*, the goods were taken directly by the mother; but in view of the nature of the goods sold to Román Guadalupe López—cash and groceries—it may be readily seen that the wife was perhaps in a better position than her husband to determine whether the

goods had been actually delivered: The fact that the appointment of the guardian *ad litem* may be void. does not affect the acceptance of the account, for such acceptance was verified by the mother.

 As to the item of $1,049.67 which was added to the former account making a total of $2,548.15, the following allegations were made in the third paragraph of the complaint filed in case No. 14,749:

"After the death of Mr. Román Guadalupe López the plaintiff delivered in his store at Vieques, groceries, goods and cash to the defendants for their support, clothing and other necessities, in the amount of $1,049.67, charged to the account of the defendants; which sum added to the former amount makes a total of $2,548.15 which the defendants owe to the plaintiff, *said amount being an account stated."* (Italics ours.)

The plaintiffs urge in the present case that the statement to the effect that the claim was an account stated—liquidated and demandable—is a mere conclusion of law and should be considered as not alleged. Consequently they maintain that the clerk could not enter judgment pursuant to § 194 of the Code of Civil Procedure, 1933 ed.

We realize that sometimes it is difficult to distinguish between a conclusion of law and an ultimate fact, for frequently the same allegation constitutes an allegation of law and fact, or as in this case an allegation of mixed law and fact. See, by analogy, what Wheaton says on "negligence" as an allegation of mixed law and fact, in his work Manner of Stating Cause of Action, 20 Cornell L. Q. 185, 203 (1935). In such a case the allegation is correct as a fact, for the latter, and not evidential facts on which the findings are based, should be pleaded.[6a] The term "liquidated' in connection with an account, in common parlance, means "an agreed balance of account or the data settled upon by which the amount can be calculated". And the expression "de-

---

[6a] Of course the adverse party, if it so requests, is entitled to know the facts on which the alleged ultimate fact is based.

mandable" when referring to an obligation, means that its performance may be demanded. Consequently, when it is alleged that the account is "liquidated and demandable" the following facts are implied: that the balance of the account is accepted as correct by the debtor and that it is due.' *Heinrick and others, Partners, etc.* v. *Englund*, 26 N.W. 122 (Minn. 1885); *Nelson* v. *Zahn Grain Co.*, 127 P. (2d) 803 (Okl. 1942); *Gasper* v. *Mayer*, 43 P. (2d) 467 (Okl. 1935). We concede that it was not expressly alleged in the complaint that the liquidation had been accepted by both parties, the creditor and the debtor; but this was not necessary. From a legal viewpoint an account can not be considered as settled unless it is agreed upon by both parties or by one of them with the express or implied consent of the other. And the allegation should be thus construed unless the contrary is proved by its context or by evidence, for according to the provisions of § 122 of the Code of Civil Procedure, "in the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties". See, by way of illustration, Rule 8(*f*) of Civil Procedure. Likewise, when it is alleged that X is insolvent, it means that his assets are insufficient to cover his liabilities. *Congress Cigar Co., Inc.* v. *Grau*, 44 P.R.R. 626; *Scott* v. *Cismade*, 74 N.E. (2d) 563 (Ohio 1947); *Oliver* v. *Coffman*, 45 N.E. (2d) 351 (Ind. 1942); *Ching Yau* v. *Rapozo*, 30 Haw. 24 (1927); *Chittenden & Eastman Co.* v. *Leader Furniture Co.*, 201 Pac. 843 (Ariz. 1921) and *Merritt* v. *Meisenheimer*, 146 Pac. 370 (Wash. 1915). In *Congress Cigar Co., Inc.* v. *Grau, supra,* the following was stated:

"In the case of *Lammert* v. *Stockings*, 61 N.E. 945, 946, decided by the Supreme Court of Indiana, the allegation that the debtor was wholly insolvent was considered as sufficient without the usual further averment that he has and had no property subject to execution. In that case the court said:

" '. . . The further allegation is that Fred Lammert was insolvent after the conveyance and when suit was begun.. It has

been held for a long time that an allegation to the effect that the debtor did not have at the date of the conveyance, nor has he since had, nor does he now have, sufficient other property subject to execution to pay his debts, or any part thereof, is a sufficient averment of insolvency. Insolvency is the ultimate fact in issue, and the absence of property subject to execution shows the condition to exist . . . The averment that the debtor was wholly insolvent is therefore sufficient, without the usual further averment that he has and had no property subject to execution, etc. If there were any doubt as to the correctness of this holding, it is removed by reference to a class of analogous cases . . . The allegation that the maker of a promissory note was wholly insolvent has always been recognized as a proper averment of fact in actions against indorsers . . . The rule is firmly established that an allegation to the effect that the debtor had and has no property subject to execution is sufficient in actions to set aside fraudulent conveyances. Insolvency may be thus averred, or it may be averred in terms, as is here done.'

"In the case of *Grunsfeld Bros.* v. *Brownell,* 76 Pac. 310, the Supreme Court of New Mexico said:

" 'The eighth section of the complaint alleges "that the defendant D. R. Brownell is insolvent", and it seems to us that this is an allegation that he (Brownell) did not own property enough to pay his debts. The term "insolvency" as used in bankruptcy and insolvency laws, means the inability of a person to pay his debts as they mature in the ordinary course of business; but, as used in a general sense, it means a substantial excess of a person's liabilities over the fair cash value of his property.' " (Pp. 630–631.)

We are of the opinion that the clerk had before him an action on an account stated and consequently he was entitled to enter the judgment by default.[7] The cases of *Rivera* v. *District Court,* 44 P.R.R. 796, and *De León* v. *Pérez,* 54 P.R.R. 202, wherein it was decided that the default judgments were void are not in point for it was not alleged in either of them that the claim was an account stated.

---

[7] See Form No. 286 for a complaint on account stated appearing on 2 Bancroft's Code Pleading with Forms, page 1122, in connection with § 780 of Vol. 2, p. 1106 of the same work.

It is true that in *E. Rubio e Hijos* v. *Carrasco*, 26 P.R.R. 224, it was said:

". . . And if the action, as would seem to have been intended by the plaintiffs, was based on various accounts stated, it is not enough that the plaintiffs alleged merely that a statement of the defendant's account had been made in each case and showed a certain balance in favor of the plaintiffs and against the defendant. They should have alleged further that the account was rendered to the defendant and that he, in some of the ways recognized by law, admitted the said balance. See 1 R.C.L., pp. 204–225, which treats of this subject clearly and concisely." (page 225.)

But the statement of the law made therein is not accurate. Contrary to what was said in that case, by alleging "that a statement of the defendant's account had been made in each case and showed a certain balance in favor of the plaintiffs and against the defendant," a correct allegation as we have seen was made; and the fact that the usual manner of expressly alleging the acceptance of the defendant was not followed does not mean that the allegation in the *Rubio* case, *supra*, was incorrect. The citation made of 1 R.C.L. pp. 204–225 is erroneous. Said paragraph does not find support in said encyclopedia. It merely states that an account stated exists when the defendant has accepted the balance alleged to be liquidated, but it does not say that the express allegation that the account was rendered to the defendant and that the latter agreed thereto, is necessary. Consequently, the language in *E. Rubio e Hijos* v. *Carrasco*, *supra*, should be understood as explained on this point.

Since the judgment by default ordering the plaintiffs herein and Alejandrina Guadalupe to pay to defendant Joaquín L. Rodríguez the amount of $2,548.15, is valid, we shall now pass on the counterclaim.

### III.

Since the property in question was adjudicated to the then plaintiff, now cross-complainant, for $500 to be

credited to the judgment of $2,548.15 a simple arithmetical operation will show that $2,048.15 is still owed to plaintiff on that judgment. And this debt has not prescribed, as alleged by the cross-defendants, for the judgment was entered on January 7, 1930 and the counterclaim was filed on February 2, 1944. Hence the prescription term of 15 years fixed by § 1864 of the Civil Code for personal actions, in the absence of a special fixed term, has not elapsed. *Valiente v. Buxó*, 68 P.R.R. 123. However, the cross-complainants are not entitled to recover the amount of $637.44 because they did not prove, as stated by the lower court, that the heirs of Román Guadalupe López owed said amount to Benítez Sugar Company. It is obvious that the $296 paid by the cross-complainants for taxes and the $218 claimed for fences and other improvements can not be recovered by them, since we have reached the conclusion that they were the owners of the property for whose benefit said disbursements were made.

For the reasons stated the judgment should be reversed and another entered dismissing the complaint, granting the counterclaim and ordering the cross-defendants to pay *in solidum* to the cross-complainants the amount of $2,048.15 which is the balance due on the judgment entered in case No. 14,749 with interest at 6 per cent per annum from February 2, 1944, on which date the counterclaim [8] was filed, plus costs.

MR. JUSTICE TODD, JR., dissenting.

I dissent. I consider that the judgment by default entered by the clerk in case No. 14,749 is void, as he had no authority to enter it, under the first subdivision of § 194 of the Code of Civil Procedure. Besides, I believe that the judgment entered in the case *E. Rubio and Sons v. Carrasco*, 26 P.R.R. 225, was rightly rendered and should not be reversed. Said case, as well as many others decided by this Court, did

---

[8] The counterclaim did not claim interest on this amount from January 7, 1930. Consequently, it should be computed from the date on which the counterclaim was filed.

but strengthen locally the ruling on an account stated according to the American Law, which establishes a new cause of action based upon a contract between the parties upon settling by agreement, open accounts between them. The action is based upon the agreement between the parties at the time of settlement. As stated in *Lange* v. *Honoré,* 51 P.R.R. 690: "The principle of an account stated depends ordinarily upon an agreement between the parties that a certain account is correct. This agreement may be express, or may be implied from the failure of the debtor to raise any objection within a reasonable time after the presentation of the account by the creditor, or perhaps by other acts of the debtor. It is essentially a new contract which is unimpeachable in its terms except for fraud or mistake."

It is because of this fact that, not only in *E. Rubio and Sons* v. *Carrasco, supra,* but also in *Insular Industrial, etc. Ass'n* v. *Cintrón,* 52 P.R.R. 611, 615, we held that in an action based upon an account stated "What is essential is an allegation as to the recognition, approval or admission of the balance, since from that recognition, approval or admission of the balance or account arises a new and independent cause of action, upon which the complaint must be founded."

In said case it was expressly set forth that the defendant acknowledged the debt and action was based upon its implied promise of payment. To the same effect in the case of *Cochran* v. *Fernández,* 47 P.R.R. 666, 673, we upheld the validity of a judgment by default entered by the clerk, saying: "The judgment by default was entered only upon the basis of the second cause of action, that is, the one founded upon a liquidated current account, *rendered to and accepted by the defendant.* That being so, this is clearly an action arising upon a contract for the recovery of money, and is therefore covered by Subdivision 1 of § 194 of the Code of Civil Procedure." (Italics ours.)

Irrespective of whether the citation of 1 Ruling Case Law in the case of *Rubio* v. *Carrasco, supra,* does not expressly

uphold what was stated in the opinion, adjudged cases uphold the conclusion reached. To that effect, in *Mortensen* v. *Dayton Sand and Gravel Co.*, 22 P. 2d 320 (Ore., 1933) the ruling laid down since 1894 is ratified in *Foste* v. *Standard Life & Acc. Ins. Co.*, 38 Pac. 617, as follows: "The material allegations in an action on an account stated are (1) that plaintiff and defendant came to an accounting together; (2) on such accounting, defendant was found indebted to the plaintiff in a specified sum, (3) which defendant promised to pay, (4) and has not paid." It is true it has been decided that regarding the third requisite, if all the other necessary facts for alleging an account stated are set forth, the promise to pay is implied from the very fact of the accounting agreed upon and accepted by the parties. 1 Am. Jur. 284, Sec. 29.

To state in a complaint that groceries, merchandise and money in the amount of $1,049.67 have been taken on credit, "said amount actually being an account stated" is not to state a cause of action on an account stated but on an open account which the plaintiff liquidated by himself. That the clerk understood it to be so is shown by the fact that upon entering judgment by default in case No. 14,749, he ordered the defendants (among them eight minors) to pay the plaintiff the total amount of $2,548.15 as "value of the open account stated in the claim."

It has been decided that an allegation (in a counterclaim) that "the plaintiff on the 10th of December, 1918 and prior thereto, was indebted to the defendant in the sum of $595.58 upon an account stated", constituted a mere legal conclusion. *Herr* v. *Kennedy*, 195 Pac. 530 (Arizona, 1921). What difference is there between said allegation and that in the case before us? None, in my judgment. To the same effect see *Mercantile Trust Co.* v. *Doe*, 146 Pac. 692 (Cal. 1914) and *Merritt* v. *Meisenheimer*, 146 Pac. 370 (Wash., 1915).

As it was understood by the clerk of the court himself upon entering judgment by default, the allegations in the complaint stated a cause of action on a current account originated;

partly by the heirs of Román Guadalupe López, and partly by their predecessor. Assuming that the mother could acknowledge the debt contracted by her husband insofar as she was concerned, I think that the case of *Fonseca* v. *Molina*, 39 P.R.R. 525 cited in the opinion of the Court, is not an authority to affirm that she could recognize said debt insofar as it affected her minor children, as said case involved a debt contracted by the mother herself for her own benefit and that of her children. In the instant case, the mother claiming that there were opposed interests between her and her minor children, petitioned the court to appoint a guardian *ad litem* for them. She further claimed that there were no paternal or maternal grand-parents and an outsider was appointed. In spite of this, it was proved that the maternal grandmother was living when the appointment of the judicial guardian was made, such appointment corresponding to her. Sections 160 and 178 of the Civil Code, 1930 ed. So that the acknowledgment of the debt that the guardian *ad litem* might have made could not bind the minor children either.

As to the cases cited in the opinion of the Court relative to the term "insolvent" used in a claim the legal situation is very different from the instant case. The word "insolvent" has no implication of a contractual relation of any kind as in the case of the term "account stated." To allege that a person is insolvent is to state an ultimate fact. To allege that a debt is a stated account is to set forth a legal conclusion, because if it has not been liquidated in agreement between the parties and accepted, such an account stated does not exist and, consequently, there is no contract between the parties warranting the clerk to enter, by operation of law, a judgment by default, pursuant to § 194, *supra, Congress Cigar Co., Inc.* v. *Grau*, 44 P.R.R. 626; *Benítez* v. *District Court*, 36 P.R.R. 408. The fact that the complaint adduced a cause of action on an open account did not justify the clerk in entering judgment by default. *Rivera* v. *Court*, 44 P.R.R. 796; *De León* v. *Pérez*, 54 P.R.R. 202.

In *Ching Yau* v. *Rapozo*, 30 Haw. 24, judgment was entered by the court after a trial on its merits. Besides, the complaint contained additional allegations, such as the date when the account was liquidated. There was no question involved of a judgment by default entered by a clerk in a case where there were defendant minors as in the case at bar.

I believe that the judgment should be affirmed.

---

ON MOTION FOR RECONSIDERATION
April 26, 1950.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

The appellants seek the reconsideration of the judgment rendered in this case. They assign two errors which in fact may be boiled down to the following: That the lower court did not acquire jurisdiction over the defendants in civil suit No. 14749, because it was not proved that a copy of the summons had been delivered to each one of them and to their mother.

The controversy herein turns on the interpretation that ought to be given to the affidavit verifying service of the summons. This affidavit insofar as pertinent reads:

". . . I notified it personally to Alejandrina Guadalupe Ortiz, Román, Pedro, Emiliano, Gregorio, Rosendo, Juana, Nepomuceno, Wenceslao, and Enrique Guadalupe, that is, the defendant mentioned in said summons, having, I mean, delivering to said defendants and leaving with them personally at their dwelling, Palma Ward, Vieques, a copy of said summons and with the defendant a copy of the complaint mentioned in said summons, . . ."

If we construe separately the phrase "delivering to said defendants and leaving with them personally at their dwelling, Palma Ward Vieques, copy of said summons," there might be some ground for doubt as to whether a copy of the summons was actually delivered to each of the defendants; but if we consider the return in its entirety we shall notice that when the person who served it refers to the delivery of the summons he uses the plural, that is, "delivering to said defendants," whereas when he refers to the delivery of the complaint he uses the singular. Perhaps it might be understood differently if the person who served it had said "delivering to said defendants and leaving with them personally at their dwelling Palma Ward, Vieques, a copy of said summons and a copy of the complaint." But as we have pointed out the person who served it was careful enough to use the plural when he referred to the persons to whom he delivered a copy of the summons and the singular when he referred to the delivery of the copy of the complaint. He indicated thus that he delivered to each defendant a copy of the summons and a single copy of the complaint for all the defendants.

*García* v. *Dávila*, 45 P.R.R. 159, decided in 1933 when procedural questions were still quite narrowly construed, as compared with the present liberal construction thereof in order to do substantial justice, is not applicable. If we examine the marshal's return in the case of *García, supra*, we shall notice that with respect to the delivery of the summons as well as to the delivery of the complaint, he uses the same language, that is, that he delivered to the defendants "a copy

of such summons, and delivering to the said defendants a true and exact copy of the complaint," thus showing that the same procedure was followed with respect to the delivery of the copy of the summons as well as with respect to the delivery of the copy of the complaint. Furthermore, that case involved a suit which originated in a municipal court, whose jurisdiction, since it is not a court of record, is not presumed. That is why this Court at the close of its opinion in that case stated:

"Even if the meaning was ambiguous or doubtful, the doubt must be resolved against the appellants. What the return said was completely consistent with a state of facts wherein the marshal had only delivered a single copy and the jurisdiction *of an inferior court not of record* must appear positively." (Italics ours.)

We might add that in the case of *Garcia, supra,* service was made by the marshal, a person who, because of the position he holds, is presumed to be familiar with the drafting of a return of process, while in this case the proof of service was drawn up by a private individual.

■ In the absence of affirmative evidence, which is lacking here, for the plaintiffs herein did not attempt at any time to prove that they had not been summoned, we must conclude that, since a court of record of general jurisdiction is involved, the presumption of jurisdiction [1] subsists, and, consequently, that the summons is valid. *Condon* v. *Associated Hospital Service,* 40 N.E. 2d. 230 (N.Y. 1942) and *Wilson* v. *Duncan,* 110 P. 2d 596 (Okla. 1941); 1 Freeman on Judgments, (5th ed. 1925) § 383, pp. 817 *et seq.*

In view of the foregoing the reconsideration sought will be denied.

Mr. Justice Todd, Jr., agrees with this decision but still dissents from the main opinion.

---

[1] Besides this presumption, we deem it advisable to say that it appears from the record that on the date of the trial the person who served the summons had died.